Reginald **WOODSON**, Appellant,

v.

**STATE of Indiana, Appellee.**

No. 49S00–8807–CR–667.

Supreme Court of Indiana.

Aug. 30, 1989.

William F. Thoms, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen. and Lisa A. McCoy, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Rape, a Class A felony, for which he received a fifty (50) year sentence; Criminal Deviate Conduct, a Class A felony, for which he received a fifty (50) year sentence; a second conviction for Criminal Deviate Conduct, a Class A felony, for which he received a sentence of fifty (50) years; Robbery, a Class C felony, for which he received an eight (8) year sentence; Kidnapping, a Class A felony, for which he received a fifty (50) year sentence, each of the above sentences to run consecutively. He also was convicted of Resisting Law Enforcement, a Class A misdemeanor, for which he received one (1) year, to run concurrently with the other counts, and Automobile Theft, a Class D felony, for which he received two (2) years, to run concurrently with the other counts. Appellant has a total sentence of two hundred eight (208) years.

The facts are: The victim left her job in downtown Indianapolis a little after 5:00 p.m. on November 21, 1986. She first went to a beauty salon where she got a hair cut, then she joined some co-workers in a local pub. She left the pub between 7:30 and 8:30 p.m. and walked to her parked car. As she entered the car, a man struck her a couple of times and forced her over to the passenger side. He then entered the car and drove away, ordering her to lower her seat in a prone position and to keep her head turned away from him. He told her if she made any noise she would be badly hurt.

He first asked her for money. She produced her wallet containing approximately $6.00. He was angered and insisted that she had more money. However, she did not. While her head was still turned, he pulled a dark knit cap over her head down to her mouth. She said at first she could see street lights through the stocking cap, but later, as he drove, the street lights disappeared.

He finally stopped the car and ordered her to remove her clothing. When she at first refused, he became angry and told her he would really hurt her unless she did

what he said. She then removed her slacks and underwear. She was unable to identify the man other than his general build, that he was black, and that he had facial hair.

The man raped her, sodomized her, and forced her to commit fellatio, at which time she told him she was going to be sick and was able to escape from the car wearing only her coat. As she left the car, the man attempted to grab her but succeeded only in grabbing the knit cap he had placed over her head. She ran to a nearby fire station where she received aid.

The firemen conveyed the information furnished by the victim to the police department and a broadcast of the description of the car, and a general description of the assailant was heard by police detective Pamela Vornholt, who observed a car of that description and license plate number being driven by a black man wearing a dark stocking cap. She testified he was the only occupant of the vehicle.

When she pulled behind him and turned on her lights and siren, the speed of the car increased, and Detective Vornholt called for aid in pursuit. After running two red lights, the driver lost control and crashed into a light pole. Detective Vornholt and three other officers who had joined in the chase surrounded the car and ordered appellant to get out.

However, he did not move until the officers forcefully removed him from the car. At that time, he was wearing a brown vinyl jacket, work gloves, and a stocking cap. The victim had stated that her assailant was wearing either a leather or vinyl jacket and that he wore gloves during the attack.

Patricia Hamby of the Indianapolis Police Department Forensics Agency testified that she analyzed samples taken from the victim during her examination at the hospital. Semen was found in the victim's genitals, anus, and vagina. Tests revealed that appellant could not be eliminated as a sperm donor. She also examined stains on appellant's stocking cap and determined them to be saliva, which matched the saliva of the victim. She examined the clothing worn by appellant at the time of his arrest.

She found semen on his boxer shorts, blue jeans, and on a towel found in the car. The police laboratory also tested the semen which was found on the seat of the car.

Appellant testified at the trial and stated that after leaving his job on the evening in question, he took a bus to visit some friends on the west side. He stated that around 9:00 p.m. he boarded the bus at 29th Street and Clifton to go downtown. He talked with the bus driver and disembarked at Illinois and Washington and went to Union Station. He eventually wound up in a nightclub where he met a man about his size and with facial hair, who gave him a ride in the car in which he was later arrested. He denied that they were pursued by any police officer and stated that as they were driving, something apparently pricked the driver and he raised up, causing him to lose control of the car and crash into the pole.

Appellant claims he was knocked out by the impact, that when he came to he could not get out on the passenger side, that he noted the door on the driver side was open, and that the driver was gone. He therefore moved over behind the wheel in an attempt to get out of the vehicle but lost consciousness and does not remember anything until he woke up in the hospital.

Appellant explained the semen on his clothes, on the towel, and on the car by the fact that he had fallen at work and bruised himself, which caused the seepage.

Appellant also called as a witness, William H. Chaney, a bus driver for the Indianapolis Public Transportation Corporation. He testified he remembered having a conversation with a person matching appellant's description, who boarded his bus on Ohio Street in front of the old Federal Building. He further testified the passenger got off his bus at 29th and Clifton, but he did not remember picking up that person later that night at 29th and Clifton as he was driving the in-bound bus.

Appellant claims there is insufficient evidence to sustain his convictions. It is his position that the evidence against him is purely circumstantial and that there is no direct evidence identifying him as the person involved in the attack on the prosecuting witness. He points to the fact that there were no samples of his hair found in the car or on the victim and the cap which allegedly covered the victim's head, including her mouth, did not contain make-up or lipstick even though the prosecuting witness testified she had on both.

He further points out that the prosecuting witness testified she did not smell any alcohol on her attacker's breath, and yet, one of the police officers testified appellant had a strong odor of alcohol at the time of his arrest. He also insisted his conversation with bus driver William Chaney occurred after he was picked up at 29th and Clifton between 8:45 and 8:55 p.m. to ride downtown.

He claims the evidence merely gives rise to a suspicion of guilt and the bare possibility that he had an opportunity to commit the crime. He cites *Gaddis v. State* (1969), 253 Ind. 73, 251 N.E.2d 658 for the proposition that this is insufficient to uphold his conviction and does not support the conclusion of guilt beyond a reasonable doubt, citing *Baker v. State* (1956), 236 Ind. 55, 138 N.E.2d 641.

■ There is no doubt that the evidence in the case at bar is circumstantial. However, we have held that a criminal conviction may be based solely upon circumstantial evidence. It is only necessary that an inference may be drawn from such evidence that supports the fact-finder's conclusion. *Owens v. State* (1987), Ind., 514 N.E.2d 1257.

■ In the case at bar, although the victim's description of her assailant is meager, appellant nevertheless fits that description. He was wearing a stocking cap similar to that described by the victim, and although the cap did not have make-up or lipstick on it, it did have saliva matching the saliva of the victim. Appellant's claim that another person was driving the car at the time it struck the utility pole is thin indeed in view of the observations of the pursuing police detective. The same is true of his explanation of how semen oc-

curred on his clothing, the seat of the car, and a towel found in the car.

Although appellant denied that a police chase occurred, the evidence is overwhelming that the police pursued the car and that at the time of pursuit there was a lone driver behind the wheel and that immediately after the crash, appellant was removed from behind the steering wheel of the car. The jury was entitled to believe that appellant did in fact attempt to flee police officers and that such circumstance could be considered as consciousness of guilt on the part of appellant. *Gee v. State* (1988), Ind., 526 N.E.2d 1152.

Under the circumstances of the evidence in this case, it was the province of the jury to determine the weight to be given the testimony and each item placed in evidence. This Court will not invade the province of the jury under such circumstances. *Riggs v. State* (1987), Ind., 508 N.E.2d 1271.

Although the evidence in this case is circumstantial, it is ample to support the verdict of the jury.

The trial court is affirmed.

SHEPARD, C.J., and PIVARNIK and DICKSON, JJ., concur.

DeBRULER, J., concurs in result without separate opinion.