Jay F. VERMILLION, Defendant–Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 84S00–9708–CR–428.

Supreme Court of Indiana.

Nov. 19, 1999.

John Pinnow, Special Assistant to the State Public Defender, Greenwood, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Carol A. Nemeth, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

DICKSON, Justice

The defendant, Jay Vermillion, was convicted of murder,[1] burglary as a class B felony,[2] auto theft,[3] and dealing in a sawed-off shotgun.[4] In this direct appeal, he asserts the following errors: (1) the denial of his motions for discharge alleging violation of Indiana Criminal Rule 4(C); (2) the denial of a speedy trial under the Sixth Amendment; (3) the denial of his motion to dismiss alleging the State's failure to preserve evidence; (4) the refusal of his tendered instruction on reckless homicide; and (5) the ineffective assistance of counsel. We affirm.

### Criminal Rule 4(C)

The defendant contends that the trial court erroneously denied his motions for discharge under Indiana Criminal Rule

---

1. IND.CODE § 35–42–1–1 (1993).

2. IND.CODE § 35–43–2–1 (1993).

3. IND.CODE § 35–43–4–2.5 (1993).

4. IND.CODE § 35–47–5–4.1 (1993).

4(C), which provides for the discharge of a defendant held to answer a criminal charge for a period aggregating more than one year, except when the delay is caused by the defendant or by reason of emergency or congestion of the court calendar.[5]

When a trial court, acting within the one-year period of the rule, schedules trial to begin beyond the one-year limit, the defendant must make a timely objection to the trial date or waive his right to a speedy trial. *Sweeney v. State*, 704 N.E.2d 86, 102 (Ind.1998). If a defendant seeks or acquiesces in a delay that results in a later trial date, the time limitations set by Criminal Rule 4 are extended by the length of such delays. *State v. Hurst*, 688 N.E.2d 402, 407 (Ind.1997). The defendant's failure to object timely will be deemed acquiescence in the setting of that date. *Young v. State*, 482 N.E.2d 246, 249 (Ind.1985). Additionally, when a defendant asks for a continuance, the time between the motion for a continuance and the new trial date is chargeable to the defendant. *Id.* If a defendant's actions cause his attorney's resignation or withdrawal, then the defendant is charged with that delay. *Isaacs v. State*, 673 N.E.2d 757, 763 (Ind.1996).

In this case, the defendant was arrested and charged on May 25, 1995. Criminal Rule 4(C) therefore required that the defendant be brought to trial within 365 days, or by May 25, 1996, unless the defendant or trial court congestion or emergency caused the delays. The defendant's trial commenced on March 4, 1997, 649 days after he was charged.

On September 12, 1995, the defendant, by counsel, filed a motion for continuance, claiming that he had not received requested copies of medical records or the State's production. The State complied with the discovery requests on September 13, 1995. On October 3, 1995, the defendant requested that his counsel be replaced. After a hearing on this matter, the trial court instead elected to appoint co-counsel. On October 10, 1995, the defendant objected to the trial court's decision to appoint co-counsel and again requested other counsel. When the trial court denied the defendant's request to appoint other counsel, the defendant asked that the trial be delayed until after June 1, 1996, so that he would have time to prepare his case. Considering the defendant's request and accommodating scheduling conflicts, the court re-set the case for trial on February 26, 1996. For the delay from October 11, 1995, to February 26, 1996, the defendant is charged with 147 days.

On January 29, 1996, the defendant, by counsel, requested resources and a continuance in order to consult with a ballistics expert and obtain a psychological evaluation. At the February 6, 1996, hearing on the defendant's motions, the trial court granted the defendant's motions for continuance and experts and re-set the trial for June 10, 1996. This 105–day delay is also chargeable to the defendant.

On February 13, 1996, the defendant filed several motions pro se, requesting that the trial court dismiss appointed counsel, grant permission to proceed pro se, and reverse its grant of a ballistics expert. The trial court granted the defendant's motions at a hearing on February 27, 1996. On the State's motion, without objection from the defendant, the trial was re-set for June 17, 1996. The defendant acquiesced in this rescheduling of the trial from June

---

5. The State contends that this claim is barred by the law of the case. This Court previously rejected the defendant's original action asserting this same claim and seeking a writ of mandamus ordering his discharge. Noting that an original action may not be used as a substitute for an appeal, that the defendant claimed that certain continuances were made necessary because of the prosecutor's action, and that the "face of the record does not justify such an assertion," this Court determined that "[o]n the basis of the materials submitted and the law governing original actions, Relator is not entitled to mandamus relief." Order of March 20, 1997. This ruling does not foreclose the presentation of this claim on appeal.

10 to June 17 and thus waived the right to object to this 7–day delay.

On March 22, 1996, the defendant filed a motion for pre-trial discovery, and, on March 28, 1996, the trial court found that the State had complied with the local rules for discovery. On May 13, 1996, at the pre-trial conference, the defendant reported that he was not ready for trial and requested appointment of a psychiatric consultant. The court granted the request, but the trial date remained set for June 17, 1996. On May 22, 1996, the defendant requested a continuance, and the trial was re-set for October 7, 1996. The defendant is charged with 112 days for this delay from June 18 to October 7, 1996. On June 16, 1996, the defendant requested another continuance. The trial court granted the request and set trial for November 12, 1996. The defendant is charged with 36 days from October 7 to November 12, 1996. On October 28, 1996, the defendant filed several pre-trial motions, including a motion to discharge and a motion to continue the trial.[6] At the defendant's request, the trial was re-set for March 3, 1997. The defendant is charged with 111 days for the period from November 13, 1996, to March 3, 1997.

The defendant contends that delays resulting from his requests for continuance should not be attributed to him because the State failed to provide prompt discovery. The defendant claims that, because of the State's discovery non-compliance, he did not know until trial that the State intended to present Detective Compton's testimony regarding comments the defendant made after he completed his tape-recorded statement. The defendant. objected to the presentation of this evidence, claiming the State failed to disclose it timely. When the deputy prosecutor attempted to lay a foundation showing that the prosecution informed the defendant of the statement, the trial court expressed doubt that the prosecutor had spoken to the defendant because the prosecutor had repeatedly stated off the record that he refused to talk to the defendant. This, however, does not establish that the State failed to comply with discovery requests, but only that. the prosecutor refused to speak directly with the defendant. Nevertheless, the trial court did not allow Det. Compton to testify about the statement, and, thus, the defendant suffered no prejudice as a result of the alleged discovery violation.

We find that the defendant caused 511 days of delay and acquiesced in 7 days, extending the permissible period under Criminal Rule 4(C) to 883 days. Even if we were to find that the entire 168 day period from September 16, 1996, to the trial on March 4, 1997, should be attributed to discovery-related delays caused by the State, there was no violation of Criminal Rule 4(C). Under this calculation, the trial court had 715 days to bring the defendant to trial, and the trial commenced in 649 days. The trial court did not err in denying the defendant's motion to discharge.

## Speedy Trial Under the Sixth Amendment

■ The defendant contends that his Sixth Amendment right to a speedy trial was violated by the twenty-one month delay between his arrest and the trial. The inquiry as to whether a defendant has been denied a speedy trial under the Sixth Amendment involves balancing a number of factors: (1) the length of delay; (2) the reason for the delay; (3) the defendant's assertion of the right to a speedy trial; and (4) any resulting prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514,

---

6. The defendant also requested appointment of a ballistics expert, despite previously requesting the trial court vacate its' grant of such an expert. On October 29, 1996, the trial court granted the defendant's request for a ballistics expert. Between the defendant's request to vacate the grant of a ballistics expert and his renewed request, 258 days elapsed, which are chargeable to the defendant. We have attributed many of these days to the defendant due to other delays.

530, 92 S.Ct. 2182, 2192, 33 L.Ed.2d 101, 117 (1972). However, "these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." *Id.* at 533, 92 S.Ct. at 2193, 33 L.Ed.2d at 118.

Initially, the defendant must show that his trial was not prompt. *Doggett v. United States,* 505 U.S. 647, 651–52, 112 S.Ct. 2686, 2690–91, 120 L.Ed.2d 520, 528 (1992). Although the Supreme Court in *Doggett* noted that many courts find the passage of approximately one year between charging and trial "presumptively prejudicial," constituting sufficient delay to trigger the analysis, it also noted that "presumptive prejudice" does not necessarily indicate "statistical probability" of prejudice, but rather simply marks the point at which the *Barker* inquiry is triggered. *Id.* at 652 n. 1, 112 S.Ct. at 2691 n. 1, 120 L.Ed.2d at 528 n. 1.

The delay in this case was twenty-one months, but the reasons for the delay are attributable largely to the defendant. He dismissed his attorney and elected to proceed pro se. He requested a ballistics expert and then withdrew that request, only to later request a continuance to consult with a ballistics or forensic science expert. And he requested a continuance to obtain a psychiatric evaluation. While the defendant contends that some of the delay may be attributed to the State for failure to provide discovery promptly, we find that most of the delays are attributable to the defendant, with regard to both the length and the reasons for the delay.

As to the defendant's assertion of his right to a speedy trial, we note that, when he sought to dismiss his attorneys, the defendant told the trial court at least twice that he did not claim the right to a speedy trial. In fact, the defendant concedes that he did not assert his right to a speedy trial until October 28, 1996, one year and five months after he was charged. This was over one year after he first told the trial

court that he was not seeking a speedy trial.

Regarding the defendant's claims of prejudice resulting from the delay, we have recognized that there are three types of prejudice: oppressive incarceration; constitutionally cognizable anxiety resulting from the excessive delay; and impairment of the defendant's rights. *Allen v. State,* 686 N.E.2d 760, 783 (Ind.1997). The defendant contends that his anxiety was greater than that experienced by other incarcerated individuals because he chose to represent himself and the State delayed in providing discovery. However, the defendant concedes that his rights were not impaired because the delay did not cause him to lose any evidence or witnesses.

Balancing the *Barker* factors, we find that the defendant is responsible for a substantial portion of the delay, did not assert his speedy trial rights until almost a year and a half after being charged, and has not shown that his rights were impaired as a result of any delay. His Sixth Amendment right to a speedy trial was not violated.

### Preservation of Evidence

The defendant next claims that the State failed to preserve potentially useful evidence that would have supported his defense of voluntary intoxication. To show a violation of the Fourteenth Amendment's Due Process Clause in the failure to preserve potentially exculpatory evidence, the defendant must show that the police acted in bad faith. *Arizona v. Youngblood,* 488 U.S. 51, 57–58, 109 S.Ct. 333, 337, 102 L.Ed.2d 281, 289 (1988). This requirement limits the police's obligation to preserve evidence to "that class of cases where the interests of justice most clearly require it, *i.e.,* those cases in which the police themselves by their conduct indicate that the evidence could form a basis for exonerating the defendant." *Id.* at 58, 109 S.Ct. at 337, 102 L.Ed.2d at 289.

Upon searching the defendant's residence, the police observed several nearly

empty bottles of liquor. The police photographed the bottles, but did not take possession of them. Some friends of the defendant later threw the bottles away. A photograph of the bottles was introduced into evidence, and one officer testified about the presence of the bottles in the residence. The police conduct in photographing the bottles and testifying at trial about the presence of the bottles shows no indication of bad faith in failing to preserve the bottles as evidence. We find no error on this issue.

### Instruction on Reckless Homicide

■ The defendant next claims error in the trial court's refusal to instruct the jury on the lesser-included offense of reckless homicide. To determine whether an instruction on a lesser-included offense is warranted, the trial court applies the three-part test set forth in *Wright v. State*, 658 N.E.2d 563, 566–67 (Ind.1995). The first two parts require the trial court to determine whether the offense is either inherently or factually included in the charged offense. *Id.* If so, the trial court must determine whether there is a "serious evidentiary dispute" regarding any element that distinguishes the two offenses. *Id.* at 567; *Brown v. State*, 703 N.E.2d 1010, 1019 (Ind.1998). If, in light of such a dispute, " 'a jury could conclude that the lesser offense was committed but not the greater, then it is reversible error for a trial court not to give an instruction, when requested, on the inherently or factually lesser included offense.' " *Id.* (quoting *Wright*, 658 N.E.2d at 567). Because the defendant did not inform the trial court of the specific evidentiary dispute claimed, we review the trial court's ruling for abuse of discretion. *Brown*, 703 N.E.2d at 1019–20.

■ At trial, the defendant claimed voluntary intoxication. The defendant's expert on intoxication, Dr. Dinesh Mehta, admitted that some of the defendant's actions and statements were consistent with an awareness of his actions. The defendant now states only that "[h]is admission that he shot and killed her at point blank range did not preclude the possibility his conduct involved an unjustifiable disregard of possible harm rather than a knowing killing," and that the threats he made toward the victim "are consistent with a knowing killing, but those threats do not conclusively establish whether he acted knowingly." Brief of Defendant–Appellant at 49.

The evidence in the record established the following. The defendant and the victim had previously been involved in a relationship, but the victim had ended it and started dating someone else. The defendant told others that, if he could not have her, he would see that no one else could either. He told a friend that he intended to go inside the victim's parents' home and kill the victim and her parents, although he never carried out that intention. The defendant also repeatedly harassed the victim and her new boyfriend in person and by telephone.

On the night of the murder, the defendant followed the victim to her new boyfriend's house. After seeing her enter the house, he walked back to his car, took a sawed-off shotgun from the trunk, and approached the front door of the house. When the victim told him to leave, the defendant shot through the door. Part of the shot hit the victim in the face. The defendant then entered the home and followed the victim through the house and into the bedroom, where she called 911. While on the telephone, the victim stated that the defendant was shooting at her and begged him not to shoot her again. The defendant then shot the victim just below the right ear, from a distance of three to six feet, killing her almost instantly. Fleeing in the victim's car, the defendant drove several miles to the home of friends and told them: "I shot her, I killed her, I shot her point blank." Record at 1461. Both friends testified that the defendant did not appear intoxicated.

The element distinguishing murder and reckless homicide is intent. *Brown*, 703 N.E.2d at 1021. Murder requires a "knowing or intentional" state of mind, but reckless homicide requires only a "reckless" state of mind. *Brown*, 703 N.E.2d at 1021. In light of the evidence and circumstances in this case, the trial court did not abuse its discretion in refusing to instruct the jury on reckless homicide.

### Right to Counsel

The defendant contends that he was denied the right to counsel because he received ineffective assistance of counsel in pre-trial proceedings when his counsel failed to pursue discovery promptly.[7] In order to prevail on a claim of ineffective assistance, the defendant must establish: (1) that trial counsel's performance failed to meet an objective standard of reasonableness under prevailing professional norms at the time of trial; and (2) that the deficient performance constituted a "breakdown in the adversarial process that rendered the result of the proceeding fundamentally unfair or unreliable." *Coleman v. State*, 694 N.E.2d 269, 272 (Ind. 1998); *Lockhart v. Fretwell*, 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993); *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984). The failure to establish either prong will cause the claim to fail. *Brown v. State*, 698 N.E.2d 1132, 1142 (Ind.1998).

The defendant claims that trial counsel was deficient in failing to pursue discovery aggressively in preparation for trial and in failing to meet with him to prepare for trial. The defendant does not claim or establish that evidence or witnesses were lost as a result of these delays. He received a full opportunity to obtain and review discovery before trial. Because we conclude that the outcome of the trial was not fundamentally unfair or unreliable as a result of the alleged deficiencies in trial counsel's performance, we reject the defendant's claim of ineffective assistance of counsel.

### Conclusion

The judgment of the trial court is affirmed.

SHEPARD, C.J., and SULLIVAN and BOEHM, JJ., concur.

---

7. A post-conviction proceeding is the preferred forum to address claims of ineffective assistance of counsel because it allows the petitioner to adequately develop the record of facts supporting the claim. *Woods v. State*, 701 N.E.2d 1208, 1219 (Ind.1998). In this case, however, the defendant was represented by counsel only in the early pre-trial stages of the proceedings. By choosing to dismiss counsel and proceed pro se, the defendant accepted the burdens and hazards of self-representation. *See Carter v. State*, 512 N.E.2d 158, 163 (Ind.1987). Because the defendant may not assert a Sixth Amendment claim of ineffective assistance of counsel due to his own performance, *id.*, the claims available to him are limited to trial counsel's performance pre-trial. In this case, we see no need for the record to be developed more fully in order to address trial counsel's performance.