Asher HILL, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A02–0107–CR–440.

Court of Appeals of Indiana.

Aug. 16, 2002.

Katherine A. Cornelius, Marion County Public Defender, Indianapolis, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Cynthia L. Ploughe, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Asher Hill appeals his convictions for carrying a handgun without a license, a class A misdemeanor,[1] criminal confinement, a class B felony,[2] and robbery, a class A felony.[3] Hill raises four issues, which we restate as:

I. Whether Hill's right to a speedy trial under Ind. Criminal Rule 4(B) was violated;

II. Whether the trial court's refusal to allow Hill to proceed to trial in the absence of witnesses denied him his Sixth Amendment right to represent himself;

---

[1]. Ind.Code § 35–47–2–1.

[2]. Ind.Code § 35–42–3–3.

[3]. Ind.Code § 35–42–5–1.

III. Whether the trial court's actions, when combined, denied Hill of his right to free and complete justice under Article I, section 12 of the Indiana Constitution; and

IV. Whether the evidence is sufficient to sustain Hill's convictions.

We affirm.

The facts most favorable to the convictions follow.[4] On May 9, 2000, Gary Barr was working as a cashier at a liquor store on south Sherman Drive in Marion County. Mike Wagner was in the store talking to Barr at the counter. An African–American male ("the robber"), who was five feet, eleven inches tall and was wearing jean shorts, white tube socks, tennis shoes, and a long sleeve, hooded, white shirt or jacket, entered the store. Immediately upon entering the store, the robber shot Barr in the abdomen and grabbed Wagner from behind. The robber walked Wagner around to the back of the counter and insisted that Wagner open the cash register. However, Wagner did not know how to open the register because he did not work at the liquor store. After trying unsuccessfully to open the register, Wagner unplugged it and gave it to the robber. The robber ordered Wagner to get on the floor, a location from which Wagner was able to observe the robber's legs and clothing. The robber threw the cash register to the ground and began kicking it until it finally opened. When the robber left the store, Wagner telephoned the police. The police dispatch report indicated that Wagner's call came in at 9:43 p.m.

At 9:45 p.m. that same night, Earnest Rich was driving on south Sherman Drive, when a mid-sized gray Mazda came speeding up behind him with its headlights on bright. Rich saw the car leave the road and run into trees on Pleasant Run Parkway. The intersection of Sherman and Pleasant Run Parkway is approximately one-half mile north of the liquor store on Sherman. Rich circled around to the accident scene and found that there was no one in the car. Rich telephoned the police.

Before the police dispatch for the accident occurred, Indianapolis Parks Department Ranger Jerald Knuckles noticed the Mazda against the trees as he was driving by on patrol. When Ranger Knuckles arrived, he noticed that the headlights and windshield wipers were on and that the engine was running. Ranger Knuckles opened the car door and saw a gun on the passenger seat. Ranger Knuckles removed the bullets from the gun and placed the gun and bullets in his patrol car until the police arrived.

The police arrived at the accident scene with Rader, a dog trained to track scents. Rader tracked a scent from the car to Pleasant Run Creek. Because the creek was high from recent rains, the officer took Rader around to the other side of the creek, where Rader was able to find the scent again. Rader tracked the scent from the creek to Pleasant Run Drive near Gale Street.

Also around 9:45 that same night, Hill, who is African American, knocked on the door at the Sterlings' house, which is on Gale Street near Pleasant Run Drive. When Mrs. Sterling saw Hill, he was "out of breath, and sort of frightened" and was wearing knee-length jean pants, tennis shoes and white socks. Transcript at 206. Hill told her that he had been carjacked and needed to use their phone. Because

---

4. The State also charged Hill with crimes that were committed in the same liquor store on May 1, 2000. Hill was tried on those charges simultaneously with the convictions appealed herein. However, as Hill was not convicted of the charges related to the May 1st crimes, we have chosen to not provide the facts and procedural history relevant thereto.

Hill had trouble using her phone, Sterling made a phone call for Hill. Sterling thought it was unusual that Hill was not calling the police to report the carjacking, so she went to her bedroom and called 9–1–1. At some point, Hill took off his shoes and socks so that he could wring the water out of his socks. The police arrived at the Sterlings' house within minutes of Mrs. Sterling's call.

The police brought Wagner to the Sterlings' house to see if Wagner recognized Hill as the man who committed the robbery and shooting at the liquor store. Wagner reported that Hill's shoes and shorts appeared to be the same as those worn by the robber. In addition, Hill had $392.23, mostly in five-dollar and ten-dollar bills.

Police found money in, and on the ground around, the Mazda. A beige colored coat was found on the bank of the creek. A crime technician found Hill's fingerprint on the driver's side window of the Mazda. On April 9, 2000, the police had conducted a traffic stop of the Mazda, at which time Hill was driving the car, which belonged to his ex-girlfriend. Ballistics tests indicated that the gun found in the Mazda was the gun used to shoot Barr.

The State charged Hill with attempted murder as a class A felony,[5] robbery as a class A felony, criminal confinement as a class B felony, unlawful possession of a firearm by a serious violent felon as a class B felony,[6] carrying a handgun without a license as a class A misdemeanor, and

carrying a handgun without a license as a class C felony.[7] The State also filed informations alleging that Hill was an habitual offender subject to sentence enhancement pursuant to Ind.Code § 35–50–2–8 and that Hill was an habitual offender subject to a sentence of life imprisonment without parole pursuant to Ind.Code § 35–50–2–8.5.

After delays that will be discussed in more detail in subsequent portions of this opinion, a jury tried Hill. The jury found Hill guilty of robbery as a class A felony, criminal confinement as a class B felony, and carrying a handgun without a license as a class A misdemeanor. The jury found that the State had proved that Hill was an habitual offender subject to either an enhancement of years or an enhancement to life without parole. The trial court sentenced Hill to one year for carrying a handgun without a license, which was to be served concurrent with a ten-year sentence for criminal confinement. The trial court ordered that the confinement sentence be served consecutive to a thirty-year sentence for robbery, which the trial court enhanced to life imprisonment without parole.[8]

## I.

The first issue is whether Hill's right to a speedy trial under Ind. Criminal Rule 4(B) was violated. There are no disputed facts regarding this issue; rather, the dispute at issue is whether the delays that occurred are chargeable to Hill or the

---

**5.** Ind.Code §§ 35–41–5–1, 35–42–1–1.

**6.** Ind.Code § 35–47–4–5.

**7.** Ind.Code § 35–47–2–1.

**8.** Ind. Appellate Rule 4(A)(1)(a) gives the Indiana Supreme Court exclusive jurisdiction over "Criminal Appeals in which a sentence of death or life imprisonment without parole is imposed under Ind.Code § 35–50–2–9 . . . ."

Hill was sentenced to life imprisonment without parole pursuant to an habitual offender enhancement under Ind.Code § 35–50–2–8.5. Because Ind. Appellate Rule 5(A) gives us jurisdiction over all appeals not specifically assigned to the Indiana Supreme Court, we have jurisdiction over Hill's appeal. *See* Ind. Appellate Rule 5(A).

State. We review this matter de novo. *See Vaughan v. State,* 470 N.E.2d 374, 377 (Ind.Ct.App.1984) (implicitly reviewing an Ind. Criminal Rule 4(B) question about which party was responsible for a delay under a de novo standard), *reh'g denied, trans. denied.*

Ind. Criminal Rule 4(B)(1) provides that if a defendant requests a speedy trial, he shall either be brought to trial within seventy days of his motion or be discharged. *See Underwood v. State,* 722 N.E.2d 828, 831 (Ind.2000), *reh'g denied.* The rule also provides two exceptions that may excuse the State from bringing the defendant to trial within seventy days. *Id.* The first exception applies when the trial court's calendar is too congested to permit a trial for the defendant within seventy days. *Id.;* Ind.Crim. Rule 4(B)(1). The second exception applies when the delay in adjudicating the defendant's guilt is caused by the defendant. *Underwood,* 722 N.E.2d at 831; Ind.Crim. Rule 4(B)(1); Ind.Crim. Rule 4(F). When we compute how many days have passed since the defendant's motion for a speedy trial, we include Saturdays, Sundays, and legal holidays. Ind. Crim. Rule 4(B)(2). However, if the seventieth day falls on a Saturday, Sunday, or legal holiday, then the defendant need not be discharged if the State brings the defendant to trial on the first business day following the seventieth day. *Id.; see also* Ind.Crim. Rule 4(E).

Hill requested a speedy trial on May 16, 2000. Hill concedes that his trial was postponed a number of times due to court congestion, and Hill does not question the propriety of those continuances. Rather, Hill claims that there are three continuances that are chargeable to the State against the seventy day deadline. The first continuance at issue is a twenty-eight day delay from February 12, 2001 to March 12, 2001 that occurred because the State needed more time to depose Hill's defense witnesses. The second continuance at issue is a seven day delay from March 12, 2001 to March 19, 2001 that occurred because the State chose the later of two trial dates offered by the trial court. The third continuance at issue is a fifty-six day delay from March 19, 2001 until May 14, 2001 that occurred when the State requested a continuance because Barr would be unable to attend trial due to a health emergency.

The combined total days attributable to those three continuances is ninety-one days. If, as Hill argues, all of these days are chargeable to the State, then the State exceeded the seventy day deadline for bringing Hill to trial, and Hill must be discharged. If, however, some of these days are not chargeable to the State, then the State may not have exceeded the seventy day deadline, and Hill would not have to be discharged. We address the continuances in chronological order.

The trial court granted the continuance from February 12, 2001 until March 12, 2001 at a pre-trial conference on February 7, 2001. The circumstances surrounding that continuance were as follows. The State had filed a motion to exclude evidence, specifically the testimony of Hill's alibi witnesses, because Hill's witnesses had failed to appear for their depositions. At the conference, Hill was represented by counsel, who had just been appointed to Hill's case a couple of weeks before the conference. The trial court announced that it typically used a "three and out policy" for deciding when a witness had missed too many scheduled depositions and the trial court should grant a motion to exclude. Transcript at 607–608. The trial court asked Hill's counsel to get the witnesses' addresses from Hill again, so that the prosecutor could try one more time to subpoena the witnesses. In addi-

tion, the trial court encouraged Hill to discuss with his witnesses the fact that they needed to show up for the depositions. The trial court announced that everyone would "come back here in about a month and see if depositions are still an issue." Transcript at 611. Hill expressed to the trial court his desire to go to trial as scheduled on Monday, February 12th, with or without his witnesses. Nevertheless, his trial was continued.

A defendant's right to the speedy trial that he requested can be waived. *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind.1999), *reh'g denied*. If a defendant fails to object to a delay that results in a later trial date, then the length of that delay extends the time limitations set in Ind. Criminal Rule 4. *Id.* Here, Hill's counsel did not object to the trial court sua sponte granting a continuance of Hill's trial so that the State could depose Hill's witnesses. Consequently, this twenty-eight day delay may not be counted against the seventy day limit that the State had to bring Hill to trial. *See, e.g., id.* at 1204–1205 (holding that a seven day delay caused by a State's motion for continuance was chargeable to the defendant when the defendant did not object).

Nevertheless, Hill claims that he should not be charged with this delay because, even though his counsel did not object to the continuance, Hill personally objected to the continuance and requested to go to trial on Monday, February 12, 2001. Hill's argument fails because if a defendant has counsel, he speaks to the court through his counsel. *Underwood*, 722 N.E.2d at 832. The court is not required to respond to the defendant's objections or motions. *Id.* As our supreme court has said: "To require the trial court to respond to both Defendant and counsel would effectively create a hybrid representation to which Defendant is not entitled."

*Id.* Because Hill was represented by counsel, the trial court was not required to grant Hill's request to proceed with a speedy trial. *See Broome v. State*, 694 N.E.2d 280 (Ind.1998), *trans. granted*, 694 N.E.2d 280, 281 (Ind.1998) (summarily affirming the Court of Appeals on this issue).

Hill alleges that there are two other delays that are chargeable to the State. However, we need not analyze whether those delays are chargeable to the State or to Hill because Hill's claim fails regardless. The two remaining delays were seven days and fifty-six days. Their combined total is sixty-three days, which is seven days short of the seventy-day limit provided by Ind. Criminal Rule 4(B). Consequently, Hill cannot demonstrate that the State failed to bring him to trial within the time allotted pursuant to his request under Ind. Criminal Rule 4(B). *See, e.g., Vermillion*, 719 N.E.2d at 1205 (holding that defendant's right to a speedy trial under Ind. Criminal Rule 4(C) had not been violated because portions of the delay were attributable to the defendant).

## II.

The second issue is whether the trial court's refusal to allow Hill to proceed to trial in the absence of witnesses denied Hill his Sixth Amendment right to represent himself. Whether the trial court's actions violated Hill's constitutional right to self-representation is a question of law that we review de novo. *See generally Sherwood v. State*, 717 N.E.2d 131 (Ind. 1999) (implicitly undertaking a de novo review when determining whether a defendant's Sixth Amendment right to represent himself was violated).

In *Faretta*, the Supreme Court held that a criminal defendant has a Sixth Amendment right to conduct his own de-

fense if he "knowingly and intelligently forgoes his right to counsel" and he "is able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S.Ct. 944, 948, 79 L.Ed.2d 122 (1984) (citing *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)), *reh'g denied*. When a defendant demonstrates that he is competent to proceed pro se, he "must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial." *Id.* at 174, 104 S.Ct. at 949. According to the Supreme Court, the policy underlying the right to appear pro se is that we want "to affirm the dignity and autonomy of the accused and to allow the presentation of what may, at least occasionally, be the accused's best possible defense." *Id.* at 176–177, 104 S.Ct. at 950.

■ To determine whether a defendant's Sixth Amendment right to represent himself has been violated, "the primary focus must be on whether the defendant had a fair chance to present his case in his own way." *Id.* at 177, 104 S.Ct. at 950. In the context of whether standby counsel had interfered with a defendant's right to present his case in his own way, the Supreme Court explained:

> the pro se defendant is entitled to preserve actual control over the case he chooses to present to the jury. This is the core of the *Faretta* right. If standby counsel's participation over the defendant's objection effectively allows counsel to make or substantially interfere with any significant tactical decision, or to control the questioning of witnesses, or to speak instead of the defendant on any matter of importance, the *Faretta* right is eroded.

*Id.* at 178, 104 S.Ct. at 951.

■ Here, Hill claims that, on two separate occasions, the trial court interfered with Hill's right to represent himself by prohibiting him from proceeding to trial in the absence of witnesses. The first situation about which Hill complains is when, during the pretrial hearing on February 7, 2001, the trial court granted a continuance to allow the prosecutor to depose Hill's witnesses despite Hill's willingness to go to trial without those witnesses. As we discussed earlier in this opinion, at the time when the trial court granted that continuance, Hill was represented by counsel. *See supra* Part I. The trial court's failure to grant Hill's request to proceed to trial without those witnesses could not have denied Hill his right to represent himself when Hill was not representing himself at that point in time. Consequently, this allegation of error fails.

■ The second situation about which Hill complains occurred during a pretrial conference held on March 16, 2001. By the time of this hearing, the trial court had granted Hill's motion to proceed pro se, and Hill was representing himself. During the March 16th hearing, the State requested a continuance pursuant to Ind. Code § 35–36–7–2 because one of its witnesses, Barr, had been hospitalized after having a heart attack. The trial court told Hill that he had the option of going to trial on Monday as scheduled if Hill agreed to stipulate that Barr would testify to thirty-three facts and if Hill agreed that the jury could be told Barr's stipulated testimony. Hill decided that he wanted to go ahead with the trial. Nevertheless, the trial court granted the State's request for a continuance.

Hill claims that the trial court erred when it granted the State's request for a

continuance pursuant to Ind.Code § 35–36–7–2. That statute provides:

(a) A prosecuting attorney may move to postpone the trial of a criminal cause because of the absence of a witness whose name is endorsed on the indictment or information, if he makes an official statement:

(1) containing the requirements of subsections (b)(1) and (b)(2) of section 1 of this chapter;

(2) showing that the absence of the witness has not been procured by the act of the prosecuting attorney;

(3) stating the facts to which he believes the witness will testify, and include a statement that he believes these facts to be true; and

(4) stating that the prosecuting attorney is unable to prove the facts specified in accordance with subdivision (3) through the use of any other witness whose testimony can be as readily procured.

Upon request of the defendant the court shall order that the prosecuting attorney's motion and official statement be made in writing.

(b) The trial may not be postponed if:

(1) after a motion by the prosecuting attorney because of the absence of a witness, the defendant admits that the absent witness would testify to the facts as alleged by the prosecuting attorney in his official statement in accordance with subsection (a)(3); or

(2) after a motion by the prosecuting attorney to postpone because of the absence of written or documentary evidence, the defendant admits that the written or documentary evidence exists.

Ind.Code § 35–36–7–2. Hill claims that because he agreed to stipulate to the facts to which Barr would testify, Ind.Code § 35–36–7–2(b)(1) prohibited the trial court from granting the continuance. The State argues that the trial court had discretion regarding whether or not to grant the continuance.

 It is true that a trial court has discretion over whether or not to grant a nonstatutory motion for continuance. *Maxey v. State*, 730 N.E.2d 158, 160 (Ind. 2000). Accordingly, even though the State's motion for continuance does not meet the statutory requirements of Ind. Code § 35–36–7–2, the trial court still has discretion to determine whether to grant a continuance. *See Baxter v. State*, 727 N.E.2d 429, 432 n. 3 (Ind.2000) (quoting *Bates v. State*, 520 N.E.2d 129, 131 (Ind. Ct.App.1988), *reh'g denied, trans. denied* ), *reh'g denied.* This is true because Ind. Code § 35–36–7–2 "merely compels the granting of a continuance under certain clearly delineated circumstances" without restricting the trial court's discretion to grant a continuance in other circumstances. *See Bates*, 520 N.E.2d at 131. Nevertheless, if the factual situation meets the "clearly delineated circumstances" outlined in the statute, then the statute compels the trial court to take the action required by the statute. *See id.* To hold otherwise would be to nullify the statute, which is contrary to the standard of review under which we interpret statutes. *See, e.g., Livingston v. Fast Cash USA, Inc.*, 753 N.E.2d 572, 575 (Ind.2001) ("We are required to determine and effect the legislative intent underlying the statute and to construe the statute ... to prevent absurdity.... In so doing, we should consider the objects and purposes of the statute as well as the effects and repercussions of such an interpretation."). Consequently, when Hill agreed that the State could present Barr's stipulated testimony pursu-

ant to Ind.Code § 35–36–7–2(b)(1), the trial court did not have discretion to postpone the trial. Consequently, the trial court erred when it granted the State's request for a continuance.[9]

■ Nevertheless, that error by the trial court did not deny Hill of his Sixth Amendment right to represent himself. Under *McKaskle,* there are two ways in which a defendant's right to represent himself can be violated. *McKaskle,* 465 U.S. at 178, 104 S.Ct. at 951. First, standby counsel could "destroy the jury's perception that the defendant is representing himself." *Id.* As the State notes, this context is not at issue here because there were no jurors present at the March 16th hearing.

■ Second, the defendant's right to represent himself is violated if the pro se defendant is not allowed "to preserve actual control over the case he chooses to present to the jury." *Id.* Consequently, the pro se defendant must be allowed to make his own tactical decisions and to control the questioning of witnesses. *Id.* For example, if a defendant has standby counsel and they disagree about any matter left to the discretion of counsel during proceedings outside the jury, those disagreements must be resolved in the defendant's favor. *Id.* at 179, 104 S.Ct. at 951.

Here, while Hill's decision to proceed to trial without the presence of Barr could be considered a tactical decision, it was not a tactical decision that was central to the defense that Hill was mounting. *See, e.g., McKaskle,* 465 U.S. at 186–188, 104 S.Ct. at 954–956 (holding that standby counsel's objections and request for a mistrial did not amount to a denial of a defendant's Sixth Amendment right to represent himself when defendant was permitted to conduct voir dire, question and cross-examine witnesses, make objections, and make an opening statement). The trial court permitted Hill to question all of the witnesses, to argue motions, to object to evidence, and to present his theory of defense. Despite the trial court's error, Hill preserved actual control over the case that he presented to the jury. *See, e.g., id.*

■ In addition, the fact that the trial court granted the State's continuance over Hill's objection did not deprive Hill of the right to defend himself. A pro se litigant's right to control his defense cannot include a right to control every aspect of the trial court's conduct of a trial. Rather, a pro se litigant should be treated similarly to counsel representing a defendant; he should be allowed to make objections and argue motions. Hill was permitted to place his objection on the record. The fact that the trial court did not do what Hill wanted does not equate with Hill not being al-

---

**9.** Although Hill does not argue that this error by the trial court, in and of itself, constituted reversible error, we feel compelled to point out that reversible error did not occur. The State requested the continuance because Barr, the liquor store clerk who was shot during the May 9th robbery, was in the hospital due to a health emergency. The Record indicates that Barr was going to testify that Hill robbed the liquor store on May 1st. However, the Record also indicates that Barr did not see the robber who shot him on May 9th. Therefore, Barr's presence at trial did not make Hill's convictions for the May 9th crimes any more or less likely. In addition,

despite Barr's presence at trial after it was postponed, Hill was acquitted of the May 1st charges for which Barr identified Hill as the robber. Consequently, Hill cannot demonstrate that he was prejudiced by the trial court's decision to postpone the trial over his objection. Because Hill was not prejudiced, the trial court's error was not reversible error. *See Akins v. State,* 429 N.E.2d 232, 235 (Ind.1981) (holding that "[a]ssuming that it was error for the trial court to grant the continuance, in view of the statute, it does not necessarily follow that a reversal is required" when the defendant was not prejudiced by the trial court's error).

lowed to represent himself. To hold otherwise would be tantamount to giving a pro se litigant more control over a trial than a trial court because every motion or objection by that litigant would suddenly have constitutional significance. Hill was not denied his Sixth Amendment right to represent himself. *Cf. Sherwood,* 717 N.E.2d at 137 (holding that defendant was denied his Sixth Amendment right to represent himself "because he was denied actual control of the case presented to the jury" when standby counsel presented a theory of defense that was inconsistent with the defendant's theory of defense).

### III.

■■■■ The third issue Hill raises is whether the trial court's actions, when combined, denied Hill of his right to free and complete justice under Article I, section 12 of the Indiana Constitution. Article I, section 12 of the Indiana Constitution provides:

> "All courts shall be open; and every person, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. Justice shall be administered freely, and without purchase; completely, and without denial; speedily, and without delay."

The first sentence of that provision applies only to civil proceedings. *Sanchez v. State,* 749 N.E.2d 509, 514 (Ind.2001). Consequently, only the second sentence of that provision is at issue here. *See id.*

Hill's argument is difficult to follow. Hill admits that his argument "is not about traditional notions of procedural or substantive due process." Appellant's Brief at 37. Rather, he claims "the trial court's decision[s], taken as a whole, denied Mr. Hill the free and complete administration of justice." Appellant's Brief at 30; *see also* Appellant's Brief at 37. To support his argument Hill asserts "[s]ituations can

occur where an accused was denied a fair trial even though legal technicalities were met." Appellant's Brief at 31. However, Hill fails to explain how he was denied a fair trial. He merely asserts that the "technicalities inherent in the speedy trial rules and the right to represent himself operate to deny Mr. Hill ... equity and a fair trial." Appellant's Brief at 36. As we have held that Hill's trial comported with the speedy trial rules and Hill's Sixth Amendment right to self-representation, we do not see how he was prejudiced and denied a fair trial by those decisions.

■■■■ In addition, Hill asserts that "[u]nder the requirement that he only be convicted if he receives a fundamentally just proceeding, there comes a time when the court's failure to intervene in the face of Mr. Hill's ignorance of procedural requirements violates the Indiana Constitution." Appellant's Brief at 32. However, "a litigant who proceeds pro se is held to the same established rules of procedure that trained legal counsel is bound to follow." *Terpstra v. State,* 529 N.E.2d 839, 842 (Ind.Ct.App.1988), *reh'g denied.* One of the risks that a defendant takes when he decides to proceed pro se is that he will not know how to accomplish all of the things that an attorney would know how to accomplish. *See Carter v. State,* 512 N.E.2d 158, 162 (Ind.1987) ("A defendant who proceeds pro se, however, must accept the burdens and hazards of self-representation.") Hill does not claim that the trial court failed to inform him of the risks of proceeding pro se. As Hill knowingly decided that he wanted to proceed pro se despite his lack of legal training, he cannot claim on appeal that he was prejudiced by his own lack of legal knowledge. *See id.* (A defendant "may not assert a Sixth Amendment claim of ineffective assistance of counsel because he, in effect, would be alleging himself ineffective."). The trial

court was not required to step in to protect Hill from himself.

To the extent that Hill is requesting that we interpret Article I, section 12 to include a heretofore unarticulated constitutional right, we refuse his request. Given that Hill's only explanations about how he was prejudiced relate to the arguments that we have already rejected, we need not read a new right into the Indiana Constitution to protect a defendant who has not demonstrated how he was prejudiced.

## IV.

 The final issue we address is whether the evidence is sufficient to sustain Hill's convictions. Our standard of review for this issue is well settled. *Alkhalidi v. State*, 753 N.E.2d 625, 627 (Ind. 2001). We may not reweigh the evidence or reassess the credibility of the witnesses because those tasks lie within the exclusive province of the jury. *Id.* Rather, we view the evidence in the light most favorable to the verdict and determine whether the probative evidence and the reasonable inferences therefrom could have allowed a reasonable jury to find the defendant guilty beyond a reasonable doubt. *Id.*

Based upon both the statute and the charging information, to convict Hill of robbery as a class A felony, the State had to prove: (1) Hill; (2) knowingly; (3) took property; (4) from Barr or from Barr's presence; (5) by using or threatening the use of force on Barr, or by putting Barr in fear; and (6) Hill's actions resulted in serious bodily injury to Barr, which was specifically a gunshot wound to the abdomen. *See* I.C. § 35–42–5–1; Appellant's Appendix at 143.

To convict Hill of criminal confinement as a class B felony, the State had to prove: (1) Hill; (2) knowingly; (3) while armed with a handgun, which is a deadly weapon; (4) confined Wagner without Wagner's consent by forcing him to lie on the floor. *See* I.C. 35–42–3–3; Appellant's Appendix at 143.

To convict Hill of carrying a handgun without a license, the State had to prove: (1) Hill; (2) carried a handgun on his person or in his vehicle while not at his home, property, or fixed place of business; (3) without a license. *See* I.C. 35–47–2–1; Appellant's Appendix at 143.

 The main thrust of Hill's sufficiency argument is that the evidence must be insufficient to support his convictions because no one ever positively identified him as the person who was at the liquor store on May 9, 2000. While Hill's assertion that no one positively identified him as the robber is correct, his assertion that we must therefore hold that the evidence was insufficient to sustain his conviction is incorrect. "[A] criminal conviction may be based solely upon circumstantial evidence." *Woodson v. State*, 542 N.E.2d 1331, 1333 (Ind.1989). The question that we must ask on review is whether "an inference may be drawn from such evidence that supports the fact-finder's conclusion." *Id.*

Here, the evidence indicates that a man, armed with a gun and wearing a white jacket, jean shorts, white tube socks, and white tennis shoes, shot Barr in the stomach, ordered Wagner to open the register and lie on the floor, and stole money from the register at the liquor store. After the robbery, the robber drove from the liquor store and crashed into trees on Pleasant Run Drive. The robber exited the car, leaving behind the gun that he had used to shoot Barr, and then he ran through the creek and toward the vicinity of Gale Street. Between the creek and Gale Street, the police found a beige jacket. Moments later, a winded Hill knocked on the door at the Sterlings' house on Gale Street asking to use the phone. Hill

claimed that he had been carjacked, but he called a friend rather than calling the police. Hill was wearing jean shorts, white socks, and white tennis shoes, and he had to take his socks off to wring them out because they were soaked with water. Hill's fingerprint was found on the outside of the window of the driver's side door of the car that the robber had been driving, and Hill had over three hundred dollars in small bills on his person when he was arrested. These facts support an inference that Hill was the person who committed these crimes. *See, e.g., id.* In addition, this evidence is sufficient to support the other elements of the three crimes of which Hill was convicted. *See, e.g., Ortiz v. State,* 716 N.E.2d 345, 352 (Ind.1999) (affirming class A robbery conviction); *Taylor v. State,* 578 N.E.2d 664, 666 (Ind. 1991) (affirming conviction for carrying a handgun without a license); *Chapman v. State,* 556 N.E.2d 927, 931 (Ind.1990) (affirming criminal confinement conviction).

For the foregoing reasons, we affirm Hill's convictions for carrying a handgun without a license as a class A misdemeanor, criminal confinement as a class B felony, and robbery as a class A felony.

Affirmed.

FRIEDLANDER, J., and BROOK, C.J., concur.