FILED

Jul 17 2023, 10:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Victoria Bailey Casanova
Casanova Legal Services, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Billy Gene Luke,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | July 17, 2023<br><br>Court of Appeals Case No.<br>23A-CR-50<br><br>Appeal from the Dearborn Circuit Court<br><br>The Honorable Frank A. Negangard, Judge<br><br>The Honorable James D. Humphrey, Judge<br><br>Trial Court Cause No.<br>15C01-2205-F4-10 |

**Opinion by Judge Mathias**
Judges Vaidik and Pyle concur.

**Mathias, Judge.**

[1] Billy Gene Luke brings this interlocutory appeal from the trial court's order that prohibited Luke from proceeding pro se and appointed counsel for Luke. Luke raises a single issue for our review, namely, whether the trial court erred when it found that he had forfeited his right to self-representation. We affirm.

## Facts and Procedural History

[2] In May 2022, the State charged Luke with Level 4 felony stalking and Level 6 felony invasion of privacy. The trial court set Luke's initial hearing date for September 6. In August, Luke filed a motion to proceed pro se. In that motion, Luke accused the trial judge of "uncivilized and unruly behavior" against Luke in a prior cause; of "total disdain" for Luke's "right to self[-]representation"; of being "tyrannical" and "belligerently angry in an unhinged manner"; and of "personal malice against Billy Luke." Appellant's App. Vol. 2, p. 43. Luke further accused the Dearborn County judges, prosecutors, and law enforcement officers of "operat[ing] in criminal concert with each other over the years to violate Billy Luke's most basic rights." *Id.*

[3] Luke filed seven other motions in August. Luke also filed a witness list that identified 135 witnesses. Included on his witness list were President Biden, Governor Holcomb, and Chief Justice Rush. *Id.* at 67-68.

[4] At his initial hearing, Luke reiterated his desire to proceed pro se. The trial court advised Luke accordingly. The court also informed Luke that, if he did proceed pro se, he would have to comply with the court's rulings. Luke stated he would do so. The court then took judicial notice of the prior cause against

Luke. In that prior cause, the same trial judge found that Luke had forfeited his right to self-representation after Luke had filed "multiple motions," the purpose of which "was to harass, disrupt[,] and insult certain parties or witnesses," and which had "no legitimate purpose." Appellant's App. Vol. 4, p. 132. After taking that notice, the court took Luke's current request under advisement.

[5] Nine days after the initial hearing, Luke filed more than 400 pages of "[m]iscellaneous [d]ocuments" with the court. Appellant's App. Vol. 1, p. 3. The relevance and purpose of those filings to the instant charges is not clear. However, throughout the documents, Luke made numerous disparaging comments about the trial judge and others along with numerous apparent threats.

[6] Following Luke's filings, on October 4, the court, on its own motion, found that Luke had forfeited his right to self-representation in the instant matter and appointed him counsel. In its order, the court recited Luke's criminal history and the prior cause's events that had resulted in the forfeiture of Luke's right to represent himself in that cause. The court then found as follows: that Luke's numerous filings in the instant cause included "threatening" language; that Luke's filings "made it clear that his purpose in self-representation is to attack the Court System and all those involved who he can bring into his proposed conspiracy theory"; that his filings contained numerous "attacks" on and at least one "threat" against state or local officials, including numerous references to "street justice"; and that his filings included "scandalous comments" and a

threat to "physically punish [a former attorney's] daughter." Appellant's App. Vol. 4, pp. 126-28. The court also noted Luke's proposed witness list.

In light of those facts and circumstances, the court concluded that Luke "is clearly intending to turn these proceedings into a circus." *Id.* at 128. The court added that Luke "potentially poses a significant security risk" in the courtroom "a few feet from the Judge." *Id.* And the court further added that Luke's "pattern of behavior," as demonstrated in both the prior cause and the instant one, "will continue." *Id.* at 129. The court then concluded that Luke had forfeited his right to self-representation and appointed counsel for Luke. The court certified its order for interlocutory review, which we accepted. This appeal ensued.

## Standard of Review

Luke appeals the trial court's order in which the court found that Luke had forfeited his right to self-representation and appointed counsel for Luke. "Whether the trial court" violated a defendant's "right to self-representation is a question of law that we review de novo." *Hill v. State*, 773 N.E.2d 336, 342 (Ind. Ct. App. 2002), *trans. denied*. As we have explained:

> A defendant in a criminal case has a constitutional right under the Sixth Amendment to proceed without the assistance of counsel. *Faretta v. California*, 422 U.S. 806, 821, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975) (holding that "[t]he Sixth Amendment . . . implies a right of self-representation"). This right may be overridden if a defendant is not "able and willing to abide by rules of procedure and courtroom protocol." *McKaskle v. Wiggins*, 465 U.S. 168, 173, 104 S. Ct. 944, 79 L. Ed. 2d 122

(1984). The trial court is in the best position to assess whether a defendant has the ability and willingness to proceed pro se. *See Edwards v. State*, 902 N.E.2d 821, 824 (Ind. 2009); *Poynter v. State*, 749 N.E.2d 1122, 1128 (Ind. 2001).

\* \* \*

[T]he United States Supreme Court has noted that "the right of self-representation is not a license to abuse the dignity of the courtroom." *Faretta*, 422 U.S. at 835 n.46, 95 S. Ct. 2525. The Indiana Supreme Court has likewise found that part and parcel of a defendant's right to represent himself is "the state's interest in preserving the orderly processes of criminal justice and courtroom decorum." *Russell v. State*, 270 Ind. 55, 383 N.E.2d 309, 312 (1978) (citing *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970); *German v. State*, 268 Ind. 67, 373 N.E.2d 880 (1978)). In other words, a trial court may terminate self-representation by a defendant who deliberately engages in serious or obstructionist misconduct, *German*, 373 N.E.2d 880, or where the record shows that the defendant was abusing his pro se status as a means to engage in dilatory tactics or to distort the conduct of the trial. *State v. Whalen*, 192 Ariz. 103, 961 P.2d 1051, 1058 (Ariz. Ct. App. 1997). . . .

In denying a defendant his right to self-representation, care should be taken to "ensure that the record reflect respect for all of defendant's rights" and, "to the extent possible, prevent the manipulative defendant from fashioning a record which seems to reflect an unconstitutional denial" of the right to counsel/self-representation. *See Russell*, 383 N.E.2d at 312. We do not find this to require that a trial court conduct a special inquiry, but nevertheless note that making a record to support the decision to terminate a defendant's self-representation would be beneficial for appellate review. We will review and consider the entire

> record to make sure the defendant's right to self-representation has not been violated.

*Love v. State*, 113 N.E.3d 730, 738-39 (Ind. Ct. App. 2018), *trans. denied*.

## The totality of the circumstances supports the trial court's determination that Luke was abusing his pro se status.

[9] The trial court concluded that Luke had forfeited his right to self-representation because, in effect, Luke was abusing his pro se status. The court's conclusion is supported by the record. Luke, acting pro se, filed seven motions in August 2022 followed by more than 400 pages of miscellaneous documents in September. Luke also submitted a witness list with 135 named individuals, including President Biden and other federal and state officials. In his filings, Luke repeatedly made threats, disparaged the trial judge and others, and alleged a federal, state, and local conspiracy against him. The relevance of the 400-plus pages of miscellaneous documents in particular is not clear. What is clear, however, is that Luke's submissions reflect dilatory tactics and an intent to distort the State's Level 4 felony stalking and Level 6 felony invasion of privacy charges against him. Accordingly, the trial court did not err when it concluded that Luke had forfeited his right to self-representation and appointed counsel for him. *See id.*

[10] Still, Luke argues that the trial court erred because none of his submissions were "in violation of any court order" at the time the court terminated his right to proceed pro se. Appellant's Br. at 21. Luke also asserts that the trial court's

judgment is not based on the instant proceedings but instead "on what the trial court fears [Luke] might do because of his conduct in prior cases." *Id.* at 22.

[11] We cannot agree. Luke's abuse of his pro se status, whether it was in violation of a standing order or not, is a sufficient basis upon which a court may terminate the right to self-representation. *See Love*, 113 N.E.3d at 738-39. Further, while the trial court was aware of, took notice of, and expressed concern about Luke's behavior in the prior cause, nonetheless its judgment was grounded in and supported by the record of Luke's behavior in the instant cause. We therefore reject Luke's arguments on appeal and hold that the trial court did not err when it found that he had forfeited his right to self-representation.

[12] The trial court's judgment is affirmed.

[13] Affirmed.

Vaidik, J., and Pyle, J., concur.