**Pursuant to Ind. Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.**

ATTORNEY FOR APPELLANT:

**ERIC K. KOSELKE**
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RYAN D. JOHANNINGSMEIER**
Deputy Attorney General
Indianapolis, Indiana

FILED

May 23 2013, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

CHARLES KOOTZ,                            )
                                         )
    Appellant-Petitioner,                 )
                                         )
        vs.                            )     No. 49A02-1209-PC-721
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Respondent.                  )

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Kurt M. Eisgruber, Judge
The Honorable Steven J. Rubick, Magistrate
Cause No. 49G01-0607-PC-133518

**May 23, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BRADFORD, Judge**

In 2007, Charles Kootz was convicted of Class C felony child molesting, Class C felony sexual misconduct with a minor, and two counts of Class D felony child solicitation. Kootz then admitted to being a repeat sex offender, and the trial court imposed an aggregate sentence of fifteen years of incarceration, with three years suspended. Kootz's convictions and sentence were affirmed on direct appeal. On August 10, 2010, Kootz filed a petition for post-conviction relief ("PCR"), contending that he had received ineffective assistance of trial counsel. Kootz filed a motion to discover, *inter alia*, the last known address of D.S., one of his victims, which motion the post-conviction court denied. Following a hearing, the post-conviction court denied Kootz's PCR petition in full. Kootz now appeals from that denial, contending that the post-conviction court erred in rejecting his claim of ineffective assistance of trial counsel and abused its discretion in denying his motion for specific discovery. We affirm.

## FACTS AND PROCEDURAL HISTORY

The facts underlying Kootz's convictions were related by this court in its disposition of his direct appeal:

> On July 7, 2006, Kootz and Baretta Calvert were living together in Indianapolis. D.W., D.S., and Z.W. received permission from their parents to spend the night at Calvert's house. Calvert was acquainted with D.W.'s mother, and told the parents of D.S. and Z.W. that he was D.W.'s uncle. Kootz arrived home around 7:00 p.m. Calvert asked the boys if they wanted back rubs, and Kootz asked them if they wanted to have their legs rubbed. Calvert rubbed the boys' backs and Kootz rubbed their legs. While Kootz was rubbing D.S.'s legs, his hand went under D.S.'s shorts and moved up to the bottom of his boxer shorts. D.S. felt uncomfortable and moved. Kootz used lotion when rubbing D.W.'s legs, and "started getting close to [D.W.'s] private," at which point D.W. pushed Kootz's hand away, told him "no," and got up and walked away. [Tr.] at 60-61. Also, while the boys were watching

2

television, Kootz "unfolded [D .S.'s] pants and said [']nice tan line.[']" *Id.* at 92.

Kootz then took the boys on motorcycle rides. After returning from the last ride, Kootz gave D.S. money and asked him if he wanted another leg rub. D.S. declined. The next morning, Kootz asked D.W. if he wanted another back rub. While Kootz was rubbing D.W.'s back, he pulled D.W.'s shorts down, "said [D.W.] had a nice butt, and [D.W.] pulled [his shorts] back up, and then [Kootz] pulled [the shorts] back down and kissed [D.W.'s] butt." *Id.* at 63. Kootz also asked D.W. if he would "like a blow job or anything like that." *Id.* at 71.

That same morning, D.S. woke up to find Kootz sucking on D. S.'s thumb. Kootz then put some money in the waistband of D. S.'s shorts, patted D.S. on the back, and kissed him on the head. D.S. then woke up D.W., and the boys woke up Calvert, who drove them home. D.S and D.W. told D.W.'s mother what had happened, and she called the police.

On July 21, 2006, the State charged Kootz with four counts of child molesting, three counts involving D.S and one count involving Z.W.; sexual misconduct with a minor, involving D.W.; and three counts of child solicitation, two counts involving D.S. and one count involving D.W. On October 4, 2006, the State filed a notice that it was seeking a repeat sex offender sentencing enhancement.

On April 9, 2007, the trial court held a jury trial. The jury returned guilty verdicts for one count of child molesting with regard to D.S., one count of sexual misconduct with a minor with regard to D.W., and two counts of child solicitation with regard to D.S. Kootz subsequently admitted to being a repeat sex offender. On April 20, 2007, the trial court held a sentencing hearing at which it sentenced Kootz to eight years with two years suspended for child molesting, enhanced by four years due to Kootz's status as a repeat sex offender; eight years with two years suspended for sexual misconduct with a minor; and three years with one year suspended for each count of child solicitation. The trial court ordered that the sentence for child molestation run consecutively to the sentence for one count of child solicitation, resulting in an aggregate sentence of fifteen years, with three years suspended.

*Kootz v. State*, No. 49A02-0705-CR-427, slip op. at 1 (Ind. Ct. App. Feb. 11, 2008) (footnotes omitted). Following direct appeal, in which Kootz challenged his sentence and the sufficiency of the evidence to sustain his convictions, this court affirmed Kootz's convictions

and remanded for the sole purpose of correcting an error in the trial court's sentencing statement. *Id.* at 3.

On August 10, 2010, Kootz filed a PCR petition. On August 25, 2010, Kootz filed a motion for specific discovery, requesting that the State produce the last known addresses of the State's witnesses who testified at trial. On September 17, 2010, the State objected to Kootz's motion for specific discovery and moved for a protective order. On January 4, 2011, the post-conviction court held an evidentiary hearing. On June 8, 2011, the post-conviction court denied Kootz's motion for specific discovery. On November 22, 2011, the post-conviction court held another evidentiary hearing. On August 13, 2012, the trial court denied Kootz's PCR petition in full.

## DISCUSSION

### *PCR Standard of Review*

Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court…. Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

## I. Ineffective Assistance of Trial Counsel

We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> [A] claimant must demonstrate that counsel's performance fell below an objective standard of reasonableness based on prevailing professional norms, and that the deficient performance resulted in prejudice. Prejudice occurs when the defendant demonstrates that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A reasonable probability arises when there is a "probability sufficient to undermine confidence in the outcome."

*Grinstead v. State*, 845 N.E.2d 1027, 1031 (Ind. 2006) (quoting *Strickland*, 466 U.S. at 694). Because an inability to satisfy either prong of this test is fatal to an ineffective assistance claim, this court need not even evaluate counsel's performance if the petitioner suffered no prejudice from that performance. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

### A. Failure to Properly Prepare for Trial

Kootz contends that his trial counsel Mark King failed to adequately investigate a witness. This claim is related to D.S., whom King unsuccessfully attempted to depose three times prior to trial. Eventually, the State had to request a bench warrant to secure D.S.'s testimony at trial. Specifically, Kootz contends that King should have moved to have D.S. excluded as a witness, requested sanctions against the State, or moved for a continuance.

> [E]stablishing [failure to investigate as a] ground for ineffective assistance … require[s] going beyond the trial record to show what the investigation, if undertaken, would have produced. This is necessary because success on the prejudice prong of an ineffectiveness claim requires a showing of a reasonable probability of affecting the result.

*Woods v. State*, 701 N.E.2d 1208, 1214 (Ind. 1998).

5

King testified at the PCR hearing that he did not move to exclude D.S. as a witness or seek sanctions because it was D.S.'s mother who was hindering access to D.S., not the State or D.S. himself. King testified that the trial court was unlikely to exclude D.S. as a witness "because it wasn't a willful act by either the State or the child." PCR Tr. p. 10. It follows that the trial court would not likely impose sanctions on the State for the same reason. Kootz has failed to show deficient performance for failing to seek D.S.'s exclusion or sanctions against the State.

As for King's decision not to seek a continuance, presumably to attempt again to depose D.S., Kootz has also failed to show prejudice. King testified that "nothing surprised [him] about what the young men said. [King] believe[s] all the facts were in the probable cause or available by the other three witnesses." PCR Tr p. 13. King also testified that even if he had met D.S. before trial, he "d[id]n't think [his] questioning would have been different." PCR Tr. p. 13. Kootz has failed to show just what information could have been discovered that would have had a reasonable probability of changing King's defense strategy, much less the result of his trial.

## B. Failure to Object to Testimony

Kootz contends that his trial counsel was ineffective for failing to object to certain testimony. Specifically, Kootz claims that King should have objected when the prosecutor elicited testimony from Kootz that he had met Calvert at a bar called the Unicorn Club, at which bar Kootz testified that he had seen men stripping. Although King did not specifically recall Kootz's testimony, when asked if he thought there would be any reason not to object to

6

such testimony, King replied:

> Yeah. If someone inadvertently or passively mentioned the Unicorn club [sic], I wouldn't have wanted to bring out special attention to it, depending on the context. The idea was to make sure that the jury had no idea that Mr. Kootz was homosexual, or even if he was, because he never really admitted it to me personally, so I didn't want that implication that he was a homosexual to be brought up at trial, so I definitely would like to believe I wouldn't have tried to bring special attention to any one particular fact.

PCR Tr. p. 9. King's testimony strongly suggests that he made a conscious, strategic decision not to object to Kootz's testimony about the Unicorn Club, and we give such decisions great deference.

> Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord those decisions deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. We recognize that even the finest, most experienced criminal defense attorneys may not agree on the ideal strategy or the most effective way to represent a client. Isolated mistakes, poor strategy, inexperience, and instances of bad judgment do not necessarily render representation ineffective.

*Smith v. State*, 765 N.E.2d 578, 585 (Ind. 2002).

We conclude that Kootz has failed to establish that King's performance was deficient in this regard. The post-conviction court found that "[t]he State did not engage in any repetitive or improper use of this topic[,]" and our review of the records supports this finding. Appellant's App. p. 75. The State did not follow up on Kootz's testimony that he had seen men stripping at the Unicorn Club, nor did it attempt to elicit any testimony that the club was a gay bar or that Kootz was homosexual. We cannot say that it was unreasonable to conclude that an objection to Kootz's brief testimony regarding the Unicorn Club might well have highlighted the testimony, even if the objection had been sustained. *See, e.g.*, *Pennycuff v.*

*State*, 745 N.E.2d 804, 815 (Ind. 2001) ("The defense attorney may well have decided, however, to let the brief statement pass unremarked rather than to highlight it with even a sustainable objection.").

Moreover, Kootz has failed to establish that he was prejudiced by the testimony. The State produced substantial evidence of Kootz's guilt, in the form of eyewitness testimony from D.W., D.S., Z.W., and Calvert. Although Calvert did not testify that he witnessed any improper touching, in general, the testimony from each witness largely corroborated that of the other three. Moreover, Kootz was acquitted of four of the eight charges originally brought against him, suggesting that the jury based its verdicts on thoughtful consideration of the evidence, not prejudice caused by any suggestion that Kootz might be homosexual. Kootz has failed to establish that he received ineffective assistance of trial counsel.

## II. Special Discovery

Kootz contends that the post-conviction court abused its discretion in denying his request to compel the State to provide him with D.S.'s last known address. "[T]he management of discovery under the Trial Rules is within the sound discretion of the trial court." *Roche v. State*, 690 N.E.2d 1115, 1133 (Ind. 1997). "We will not reverse a trial court's decision on discovery absent an abuse of discretion." *Id*. "An abuse of discretion is found when the result reached by the trial court is clearly against the logic and effect of the facts and circumstances before the court or the reasonable, probable, and actual deductions flowing therefrom." *Hall v. State*, 760 N.E.2d 688, 689-90 (Ind. Ct. App. 2002), *trans. denied*.

The post-conviction court did not abuse its discretion in denying Kootz's specific discovery request. Although Kootz notes that there is no evidence that he has ever harassed, intimidated, or threatened D.S., the fact remains that he was convicted of molesting him. It is safe to assume that any communication from Kootz or his attorney would be very traumatic for D.S. and his family. Moreover, Kootz once again fails to explain, much less show, just what he hoped to gain from contact with D.S. Kootz speculates that deposing D.S. might uncover something that would bolster his ineffective assistance of counsel claim, but there is nothing in the record to support this speculation. Finally, there is no evidence that D.S.'s address was somehow under the sole control of the State or that it was otherwise unavailable to Kootz. The record makes it clear that D.S.'s and his mother's full names were known to Kootz, and yet Kootz does not claim that he made any attempt to try to locate D.S. on his own. The post-conviction court did not abuse its discretion in denying Kootz's request for specific discovery.

The judgment of the post-conviction court is affirmed.

RILEY, J., and BROWN, J., concur.