## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 05 2015, 8:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

William D. Polansky
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Michael Gene Worden
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Arthur L. Gates,

*Appellant-Petitioner,*

*v.*

State of Indiana,

*Appellee-Respondent.*

November 5, 2015

Court of Appeals Case No. 82A01-1504-PC-149

Appeal from the Vanderburgh Superior Court

The Honorable Robert J. Pigman, Judge

Trial Court Cause No. 82D03-0905-PC-3

**Bradford, Judge.**

# Case Summary

[1] Appellant-Petitioner was convicted in 2008 of Class A felony rape, Class D felony residential entry, and Class D felony criminal confinement, for which he

received an aggregate forty-eight-year sentence. At trial, Appellee-Respondent the State of Indiana presented forensic evidence, including evidence that P30, a protein in seminal fluid, was found in an external vaginal swab of the victim and that one sperm head was found in an oral swab. In addition, dried secretions and bite mark collections swabs were tested for DNA and Gates could not be excluded. On direct appeal, Gates appealed his sentence, and we affirmed the judgment of the trial court.

[2] In 2009, Gates filed a *pro se* petition for post-conviction relief ("PCR"). In 2013, Gates, by counsel, filed a motion for DNA testing, which the post-conviction court granted. At the evidentiary hearing, Gates presented the testimony from an expert who opined that the new DNA testing refuted evidence presented by the State at trial. The post-conviction court concluded that Gates's new evidence was not likely to produce a different result at retrial and concluded that Gates did not receive ineffective assistance of trial counsel and so denied his PCR petition. Gates contends that the post-conviction court erred in denying both of his claims. Because we disagree, we affirm.

## Facts and Procedural History

[3] The background for this appeal was outlined by this court in our disposition of Gates's direct appeal:

> On the night of May 22, 2007, Gates knocked on the door of B.D.'s residence at 517 Covert Avenue in Evansville and forced his way inside. B.D. has a mental disability and lives alone with her dog. B.D. recognized Gates, who was her neighbor's

acquaintance. Gates engaged B.D. in a lengthy conversation about various topics. At some point Gates pulled out a gun, pointed it at B.D., and threatened to shoot both B.D. and her dog if she would not have sex with him. As B.D. repeatedly refused, Gates choked B.D. and hit her in her face multiple times with his fists, breaking her glasses and cutting her forehead. Gates locked the front door and pushed B.D. into her bedroom. In her efforts to escape from Gates, B.D. bumped her head against a wall and against the dresser in her bedroom, cutting her head. Gates told B.D. to remove her clothes, then forcibly removed her nightgown and panties. Gates placed his penis into B.D.'s vagina and licked her breast. According to B.D., Gates subsequently ejaculated onto her breast and passed out on her bed.

B.D. then dressed herself in shorts and a gown, fled the house with her dog, and flagged down Evansville Police Officer Donald Thompson, who was nearby. When Officer Thompson and other authorities, including Sergeant Brent Hoover, arrived at B.D.'s home, they found Gates on the bed in the bedroom, clothed only in pants pulled down around his ankles. Gates, who smelled of alcohol, appeared to have passed out. A weapon appearing to be a handgun was on the floor next to the bed. After another officer kicked the mattress, Gates sat up, clenched his fists and cursed. Sergeant Hoover used a taser to subdue Gates.

Subsequent medical examinations revealed a tear to B.D.'s hymen, a four-centimeter laceration to her head requiring staples, and multiple facial bruises and scratches. DNA tests performed on a substance found on B.D.'s left breast revealed results consistent with Gates's DNA profile.

*Gates v. State*, Cause No. 82A01-0806-CR-302 at *1-2 (Ind. Ct. App., Jan. 30, 2009) (footnotes omitted).

[4] Sara Walker testified regarding DNA testing at Gates's trial. Walker had tested for a protein named P30, which she testified was a "prostate specific protein that's found in seminal fluid." Trial Tr. p. 430. Walker also testified that it would be possible to have seminal fluid even without sperm. Item 1B, the external vaginal swab of B.D., tested positive for P30, although Walker conceded on cross-examination that the test yielded a "weak positive." Trial Tr. pp. 429, 447-48. Item 1G, "a dried secretion and bite mark swab" collected from B.D.'s left breast, was also tested. Trial Tr. p. 436. DNA testing on item 1G indicated a mixture of DNA from Gates and B.D. such that there was a 1 in 270,600 chance "that a random individual would be included in the mixed DNA profile[.]" State's Ex. 42 at 3. (Trial Tr. 438-39). Walker also testified that Item 1R, the oral smear, yielded one sperm head.

[5] On May 29, 2009, Gates filed a *pro se* PCR petition, alleging that he had been denied his right to a speedy trial, his right to a fair trial was violated, and that he received ineffective assistance of trial and appellate counsel. On March 27, 2013, Gates, by counsel, filed a motion for DNA testing. At an evidentiary hearing on his motion for additional DNA testing held on March 5, 2014, Gates called Karl Reich, Ph.D., to the stand. Reich filed a report and criticized the State's forensic evidence at trial, specifically the positive P30 test of the outer vaginal swab and Walker's conclusion that the oral smear contained a sperm head. PCR Ex. 8 at 5-6. According to Reich, P30 is not exclusively found in males. Reich also noted that the State used the ABA card method for testing for P30 when the alternative RSID-Semen test had been available since

2006. According to Reich, the RSID-Semen test is more specific and generates far fewer false-positive results.

[6] On March 27, 2014, the trial court granted Gates's motion for additional DNA testing. On November 17, 2014, Gates filed an amended PCR petition, alleging that newly-discovered evidence and ineffective assistance of trial counsel entitled him to relief.

[7] On January 23, 2015, the post-conviction court held an evidentiary hearing on Gates's amended PCR petition, at which Reich again testified. The results of the new testing indicated that Item 1B was negative for seminal fluid, as was Item 1G and item 1D (the oral swab from which Item 1R was made). PCR Ex. 11 at 2. The three items were also determined to contain no sperm. PCR Ex. 11 at 2-3. Gates introduced an affidavit from his trial counsel, in which trial counsel averred that neither he nor co-counsel considered hiring an expert to challenge the State's forensic evidence because they believed that the results helped Gates more than they hurt him. PCR Ex. 3. Trial counsel also indicated that he believed at the time that P30 was a male-only material. PCR Ex. 3.

[8] On March 27, 2015, the post-conviction court issued its order denying Gates post-conviction relief. The post-conviction court found that Gates had satisfied eight of the nine requirements in order to receive relief from newly-discovered evidence but had failed to establish that it would probably produce a different

result at trial. The post-conviction court also concluded that Gates had not received ineffective assistance of trial counsel.

# Discussion and Decision

### *Standard of Review*

[9] Our standard for reviewing the denial of a PCR petition is well-settled:

> In reviewing the judgment of a post-conviction court, appellate courts consider only the evidence and reasonable inferences supporting its judgment. The post-conviction court is the sole judge of the evidence and the credibility of the witnesses. To prevail on appeal from denial of post-conviction relief, the petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite to that reached by the post-conviction court.… Only where the evidence is without conflict and leads to but one conclusion, and the post-conviction court has reached the opposite conclusion, will its findings or conclusions be disturbed as being contrary to law.

*Hall v. State*, 849 N.E.2d 466, 468, 469 (Ind. 2006) (internal citations and quotations omitted).

# I. Newly Discovered Evidence

[10] Gates contends that the post-conviction court erred in concluding that the results of the retesting of the physical evidence do not entitle him to post-conviction relief.

> [N]ew evidence will mandate a new trial only when the defendant demonstrates that: (1) the evidence has been discovered since the trial; (2) it is material and relevant; (3) it is

not cumulative; (4) it is not merely impeaching; (5) it is not privileged or incompetent; (6) due diligence was used to discover it in time for trial; (7) the evidence is worthy of credit; (8) it can be produced upon a retrial of the case; and (9) it will probably produce a different result at retrial.

*Taylor v. State*, 840 N.E.2d 324, 329-30 (Ind. 2006) (quoting *Carter v. State*, 738 N.E.2d 665, 671 (Ind. 2000)).

[11] The post-conviction court concluded that Gates satisfied the first eight of these requirements but not that the evidence in question would likely produce a different result at retrial. We conclude that this was not error. As the post-conviction court pointed out in its order, Gates's identity was never really in question in this case, only what he did, and the test results, whether the State's or Gates's, did not do nearly as much to clarify Gates's actions as other evidence, of which there was much.

[12] The State presented substantial evidence that Gates sexually assaulted B.D. Not only did the jury hear B.D.'s testimony to that effect, it heard evidence that B.D. sustained a hymenal tear consistent with sexual assault; Gates threatened B.D. with a gun; a toy gun was found next to B.D.'s bed; Gates was found naked in B.D.'s bed; Gates resisted arrest; B.D. suffered significant injury to her face, head, and arms; B.D.'s home suffered damage including a hole in the wall; and Gates lied to police about being in B.D.'s bedroom and knowing her previously. The post-conviction court, which also presided over Gates's trial, found B.D.'s trial testimony to be "moving and persuasive[,]" Appellant's App. p. 108, and noted that the forensic evidence was not even mentioned by the

State during its closing argument. In light of the whole of the trial record, the post-conviction court did not err in concluding that the State's forensic evidence played little part in Gates's convictions.

[13] In any event, the results of the new testing did little to undermine the State's original testing. Gates's testing challenged only the State's trial evidence that seminal fluid was found in the outer vaginal swab and a sperm head was found in Item 1R. As for the positive P30 test, even Walker admitted on the stand that the results of the test were a "weak positive[,]" Trial Tr. pp. 447-48, and Reich conceded that penetration could occur without seminal fluid being found. As for the sperm head Walker testified to finding in Item 1R, Gates only retested the oral swab from which Item 1R was drawn, *not* Item 1R. In summary, the State's forensic evidence was relatively weak to begin with, and the results of the retesting did not completely undermine it. Considering the strength of the State's other evidence of Gates's guilt, the post-conviction court did not err in concluding that Gates failed to establish that the new test results would result in a different result at trial.

## II. Ineffective Assistance of Trial Counsel

[14] We review claims of ineffective assistance of counsel based upon the principles enunciated in *Strickland v. Washington*, 466 U.S. 668 (1984):

> Under *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), a claim of ineffective assistance of counsel requires a showing that: (1) counsel's performance was deficient by falling below an objective standard of reasonableness based on

prevailing professional norms; and (2) counsel's performance prejudiced the defendant so much that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 687, 694, 104 S. Ct. 2052; *Lowery v. State*, 640 N.E.2d 1031, 1041 (Ind. 1994). …. Failure to satisfy either prong will cause the claim to fail. *Vermillion v. State*, 719 N.E.2d 1201, 1208 (Ind. 1999).

*French v. State*, 778 N.E.2d 816, 824 (Ind. 2002).

[15] Moreover, counsel is given wide discretion in determining strategy and tactics, and therefore courts will accord these decisions deference. *Timberlake v. State*, 753 N.E.2d 591, 603 (Ind. 2001). "A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. "Whether a lawyer performed reasonably under the circumstances is determined by examining the whole of the lawyer's work on a case." *Oliver v. State*, 843 N.E.2d 581, 591 (Ind. Ct. App. 2006), *trans. denied*. "A defendant must offer strong and convincing evidence to overcome the presumption that counsel prepared and executed an effective defense." *Id*.

[16] Gates contends that his trial counsel was ineffective for failing to seek independent testing to refute the State's forensic evidence. One of Gates's trial counsels filed an affidavit indicating that he did not seek a DNA expert to refute the State's evidence because he felt it worked more in Gates's favor than the State's. Under the circumstances of this case, Gates has failed to establish that this was an unreasonable strategy. The state's forensic testing on the various swabs taken from B.D. tended to establish only (1) Gates's DNA was found on

her breast (which Gates did not attempt to refute), (2) a sperm head was found in a smear prepared from an oral swab, and (3) a weak positive for seminal fluid was found in an outer genital swab. In other words, no genetic material identified as originating from Gates was found in or around B.D.'s vagina, anus, or mouth. Under the circumstances, Gates's trial counsel reasonably argued in closing that the State's forensic evidence had failed to establish that a rape had occurred, much less one committed by Gates. Moreover, as mentioned, the post-conviction court noted that the State's forensic evidence was so weak that it did not even mention it during closing. In light of the fact that the State's forensic evidence, standing alone, fell far short of proving that Gates had sexually assaulted B.D., we cannot say that his trial counsel was ineffective for failing to hire an expert to refute it. Gates has failed to establish that he received ineffective assistance of trial counsel.

[17] The judgment of the post-conviction court is affirmed.

May, J., and Crone, J., concur.