

FILED

Apr 30 2026, 9:22 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



I N T H E

# Court of Appeals of Indiana

Barry D'Marlo Billingsley,

*Appellant-Defendant*

v.

State of Indiana,

*Appellee-Plaintiff*

---

April 30, 2026

Court of Appeals Case No.
25A-CR-1654

Appeal from the Lake Superior Court

The Honorable Gina L. Jones, Judge

Trial Court Cause No.
45G03-2110-MR-42

---

**Opinion by Judge Mathias**

Judge May concurs.
Judge Felix concurs in part and concurs in result with a separate opinion.

**Mathias, Judge.**

[1]     Indiana Criminal Rule 4(C) places an affirmative duty on the State to bring a criminal defendant to trial within an aggregate total of 365 days after the later of the defendant being charged or arrested. Those days need not be consecutive and, indeed, delays often happen due to the defendant's own acts, which are excluded from the 365-day rule. However, historically, our trial courts have not been required to designate a delay on the record as attributable to one of the parties, which left records unclear with respect to determining the remaining days under Rule 4(C). That lack of clarity, coupled with the State's affirmative duty, frustrated Rule 4(C)'s purpose of furthering the speedy-trial rights of defendants and made the accuracy of appellate review of Rule 4(C) decisions difficult.

[2]     Effective January 1, 2024, the Indiana Supreme Court amended the Indiana Criminal Rules to include a new provision as Criminal Rule 4.1(A)(4). That provision states: "When granting or ordering a continuance, the court must designate whether the delay is excluded from the Rule 4 time period due to the act of the defendant, court congestion, or emergency." Ind. Criminal Rule 4.1(A)(4) (2024). And, by implication, if the trial court does not designate that the delay is excluded, then the delay is not excluded. *See id.* Rule 4.1(A)(4) is

intended to enhance the record's clarity in the designation of delays by not having those designations be determined in the first instance through Rule 4 filings made well after the fact of a delay. That clarity, in turn, enables the parties to anticipate when key procedural events will occur or will need to occur, such as preserving a motion for dismissal under Rule 4(C) for appellate review, and furthers Rule 4's essential purpose of giving effect to our constitutional speedy-trial provisions.

[3] We thus conclude, as a matter of first impression, that Rule 4.1(A)(4)'s mandate on our trial courts imposes a corresponding duty on the parties to timely object, with a specifically stated ground, to the trial court's designation of a delay under that Rule in order to preserve appellate review over whether the court's designation was correct. A timely and specific objection provides the trial court with the opportunity to cure any error and furthers Rule 4.1(A)(4)'s purpose of ensuring that the record is clear, accurate, and can be relied upon going forward. In the absence of such an objection, the correctness of the trial court's designation is not preserved for appellate review. We emphasize that the duty to object to purportedly erroneous designations of delays in accordance with Rule 4.1(A)(4) is about ensuring the correctness of the court's records; it neither alters the State's affirmative duty to bring a defendant to trial within 365 days under Rule 4(C), nor does it impose an obligation on the defendant to remind the State or the court of the State's duty.

Here, Barry D'Marlo Billingsley appeals his conviction for murder.[1] Billingsley raises two issues for our review, which we restate as follows:

> 1. Whether the trial court erred when it denied his Rule 4(C) motion for dismissal.

> 2. Whether the trial court abused its discretion in the admission of certain evidence.

We affirm.

## Facts and Procedural History

In October 2021, Billingsley was a long-term guest at the Fairbridge Inn Express hotel in Merrillville. The Economy Inn of America hotel was across the street from the Fairbridge Inn. Alantae Thornton and his girlfriend, Geni[2] Larcom, were long-term guests at the Economy Inn. Billingsley and Thornton hung out together on an almost "daily" basis. Tr. Vol. 4, p. 12.

Around 4:30 p.m. on October 2, Jamie McQuen, the Fairbridge Inn desk clerk, observed Billingsley and Thornton walk past her toward Billingsley's room. She saw that Billingsley was wearing a black baseball cap, a blue denim jacket, and white gym shoes. Not long afterward, Billingsley and Thornton left the Fairbridge Inn and went to Thornton's room at the Economy Inn.

---

[1] Billingsley does not separately appeal the trial court's finding that he committed the murder with a firearm.

[2] The transcript shows her first name as Geni, but the parties use Gerri in their briefs.

[8] Around 5:15 p.m., Anthony Gibbs and his girlfriend, Janna Covelli, arrived at the Fairbridge Inn and attempted to rent a room. McQuen denied them their request. Gibbs and Covelli then went across the street to the Economy Inn to attempt to rent a room there. Andy Tants, the desk clerk there, also denied them their request.

[9] Shortly before 6:00 p.m., Magen Johnston pulled into the Economy Inn parking lot and parked her car near Thornton's room. Covelli approached Johnston and began talking to her through Johnston's car window. Within seconds, Thornton and Larcom approached Covelli and Johnston. Larcom engaged in a scuffle with Johnston at the car window, and Thornton pushed Larcom back away from Johnston. State's Ex. 24, File 2021OCT02163000_CH7_0, at 1:22:20 to 1:22:55.

[10] Gibbs and Billingsley then arrived at Johnston's car. Thornton and Larcom left the scene upon Billingsley's arrival, and Billingsley began gesturing in the direction of Gibbs and Covelli with his right hand, which was concealed in the right pocket of his denim jacket. *Id.* at 1:23:07 to 1:23:18. Billingsley's gestures were suggestive of holding a firearm inside that pocket. Gibbs and Covelli backed away from Billingsley and toward the Economy Inn laundry room. Billingsley followed them, continuing his gestures. *Id.* at 1:23:18 to 1:23:44. In the Economy Inn's soundless surveillance footage of the scene, Billingsley then suddenly turns and flees; Johnston suddenly speeds away; and Gibbs collapses. *Id.* at 1:23:44 to 1:24:07.

[11] Across the street, McQuen heard "six or seven" gunshots coming from the direction of the Economy Inn. Tr. Vol. 3, p. 216. She immediately ran across the street "[t]o see if somebody needed help." *Id.* Tants likewise left the front desk of the Economy Inn and saw Gibbs "on the ground" near the laundry room. Tr. Vol. 4, p. 5. Tants then called 9-1-1.

[12] Officers arrived on the scene shortly thereafter and observed that Gibbs was on the ground with "a large pool of blood" under him. Tr. Vol. 3, p. 83. Gibbs had been shot five times, including in the face and in the right leg. Covelli had been shot in the foot. Medical personnel transported Gibbs to a nearby hospital, where he later died from his injuries.

[13] Covelli identified Billingsley to officers as the shooter. Investigating officers seized relevant surveillance footage from both hotels. They also located spent .40-caliber bullets and casings from the scene of the shooting. And they obtained Billingsley's cell phone number and a warrant to track his location.

[14] The evening of the shooting, Billingsley arrived at the residence of an acquaintance, Erica Spires. She observed that he was wearing a denim jacket and a black hat. He spent the night at her residence and, the next morning, asked Spires to drive him in her vehicle to his mother's house so he could "get money." Tr. Vol. 4, p. 232. Spires agreed.

[15] Shortly after they left Billingsley's mother's residence, Spires pulled into a gas station. There, officers surrounded her vehicle. Spires put her hands out of the driver's side window and told the officers that Billingsley "had a gun" and "he

was going to shoot at them." *Id.* at 233-34. Officers eventually secured the scene and arrested Billingsley. From his person, officers seized $4,688.30 in cash.

[16] Officers towed Spires's vehicle and performed a corresponding inventory search of the vehicle. From inside Spires's vehicle, officers seized a blue denim jacket that Spires later testified was Billingsley's jacket. That jacket had a hole in the right pocket that was consistent with "the muzzle of [a] firearm" having been inside the pocket and then "discharged." Tr. Vol. 6, p. 69. Officers also seized a .40-caliber handgun that Spires testified was Billingsley's handgun. "[A]ll" of the recovered spent shell casings from the scene of Gibbs's murder "were . . . fired" from that weapon. *Id.* at 47.

[17] On October 6, 2021, the same day officers arrested Billingsley, the State charged him with Gibbs's murder and with Level 3 felony aggravated battery of Covelli. The State also alleged a sentencing enhancement for the use of a firearm in the commission of the offenses. In April 2022, the State attempted to obtain a buccal swab from Billingsley for DNA analysis, but he initially refused to provide one. On May 5, Billingsley agreed to provide the buccal swab, and he in fact provided it five days later.

[18] In the four-plus years following his arrest and the filing of the State's charges, Billingsley caused numerous delays in the setting of his trial date. In its CCS, the trial court specifically designated the Criminal Rule 4 time that resulted from several of those delays to Billingsley without objection. However, the State also repeatedly provided discovery to Billingsley well after the trial court's

deadline to do so, including, on at least four different occasions, within days of his scheduled trial date. In November 2024, Billingsley moved for dismissal of the State's charges against him for allegedly violating the 365-day rule under Indiana Criminal Rule 4(C). The trial court denied his motion and set his trial date for January 6, 2025.

[19] On January 6, Billingsley renewed his motion for dismissal under Rule 4(C), and the court again denied it. That same day, the court empaneled a jury for Billingsley's trial. Two days later, the court declared a mistrial due to an unspecified "medical emergency." Appellant's App. Vol. 2, p. 34. The State then moved to dismiss the Level 3 felony charge against Billingsley because the State had tendered Billingsley with material evidence relevant to that offense for the first time after the jury had been empaneled. The trial court granted the State's motion to dismiss the Level 3 felony charge and then held Billingsley's retrial in May 2025.

[20] At Billingsley's retrial, the court admitted into evidence the Fairbridge Inn and Economy Inn surveillance videos proximate to the shooting as State's Exhibits 20 and 24. The trial court also admitted corresponding still images from those videos, evidence of the cash found on Billingsley at the time of his arrest, and evidence that Billingsley had refused to submit to a buccal swab in April 2022. The trial court admitted all of that evidence into the record over Billingsley's objections. The State also presented testimony and forensic evidence relating to Billingsley's firearm, jacket, and the spent bullets and shell casings at the scene of the murder.

[21] The jury found Billingsley guilty of murder, and, after he waived his right to a jury trial on the firearm enhancement, the court found him guilty of that allegation as well. Following a sentencing hearing, the court ordered Billingsley to serve eighty-two years in the Department of Correction.

[22] This appeal ensued.

## 1. Billingsley is unable to show a Criminal Rule 4(C) error.

[23] On appeal, we first address Billingsley's argument that the trial court erred when it denied his motion for dismissal under Indiana Criminal Rule 4(C). "We review a trial court's ruling on a Rule 4(C) motion for an abuse of discretion." *Curtis v. State*, 948 N.E.2d 1143, 1149 (Ind. 2011). "A trial court abuses its discretion if its decision is clearly against the logic and effect of the facts and circumstances before the court or if it misapplies the law." *M.D. v. State*, 108 N.E.3d 301, 303 (Ind. 2018). However, where the relevant facts underlying a Criminal Rule 4 motion are not in dispute and the issue on appeal is a question of law, our review is de novo. *Battering v. State*, 150 N.E.3d 597, 600 (Ind. 2020).

### 1.1. The significance of our new Criminal Rule 4.1(A)(4).

[24] Indiana Criminal Rule 4(C) (2024)[3] provides:

---

[3] The Indiana Supreme Court amended Criminal Rule 4 after Billingsley had been arrested and charged and prior to his trial. But, at least with respect to Rule 4(C)'s operative terms, those amendments are irrelevant to this appeal, and for ease of reference we use the current language of Rule 4(C).

No person can be held on recognizance or otherwise to answer a criminal charge for a period in aggregate exceeding one year from the date the criminal charge against such defendant is filed, or from the date of the arrest on such charge, whichever is later. Delays caused by a defendant, congestion of the court calendar, or an emergency are excluded from the time period. If a defendant is held beyond the time limit of this section and moves for dismissal, the criminal charge against the defendant must be dismissed. The one-year time limit does not apply to a retrial following a mistrial . . . . The trial court must commence the retrial within a reasonable time.[4]

[25]     As our Supreme Court has explained:

*The broad goal of Indiana's Criminal Rule 4 is to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial. Cundiff v. State*, 967 N.E.2d 1026, 1027 (Ind. 2012); *see also* U.S. Const. amend. VI; Ind. Const. art. 1, § 12. It places an affirmative duty on the State to bring the defendant to trial, but at the same time [it] is not intended to be a mechanism for providing defendants a technical means to escape prosecution. *Cundiff*, 967 N.E.2d at 1028 (citing *Curtis*[,] 948 N.E.2d [at 1151] and *Loyd v. State*, 272 Ind. 404, 410, 398 N.E.2d 1260, 1266 (1980)).

*Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013) (emphasis added; footnote omitted).

---

[4] Rule 4(C)'s amended 2024 language applied to the timeframe between Billingsley's mistrial and retrial, which both happened in 2025. Billingsley does not challenge the reasonableness of that five-month timeframe on appeal.

The Indiana Supreme Court has long held that, in order for a defendant to preserve his right to be brought to trial within the one-year period of Rule 4(C), he must "alert the court when a trial date has been established beyond the proscribed limits of the [R]ule." *State ex rel. O'Donnell v. Cass Sup. Ct.*, 468 N.E.2d 209, 211 (Ind. 1984). In other words, to ensure that the State has met its duty to bring him to trial within one year, the defendant must, within the one-year period, object to the court setting a trial date that is beyond that period. *See State v. Larkin*, 100 N.E.3d 700, 704 (Ind. 2018). If the defendant does not lodge that objection, the defendant will have "acquiesced" in having his trial occur after the one-year period. *Little v. State*, 275 Ind. 78, 81, 415 N.E.2d 44, 46 (1981) ("If the defendant sits idly by at a time when the court could yet grant him a trial within the proper period and permits the court, without objection, to set a date beyond that period, he will be deemed to have acquiesced therein."); *see also Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999) (stating that the failure to timely object under Rule 4(C) is acquiescence "in a later trial date").

Aside from that singular objection requirement, however, a defendant has "no duty" under Rule 4(C) "to take an affirmative action to ensure his being brought to trial within the time guidelines of the rule." *State ex rel. O'Donnell*, 468 N.E.2d at 211. Likewise, our Court's precedents have long stated that a defendant has "no obligation to remind the State of its duty or to remind the

trial court of the State's duty."[5] *Crabb v. State*, 242 N.E.3d 539, 542 (Ind. Ct. App. 2024); *Staples v. State*, 553 N.E.2d 141, 143 (Ind. Ct. App. 1990), *trans. denied*.

[28] Significantly, prior to January 1, 2024, our trial courts had no affirmative obligation under Criminal Rule 4 to designate on the record when delays in holding the defendant's trial were caused by the defendant[6] and, therefore, excluded from Rule 4(C)'s one-year time period. *See* Crim. R. 4(C) (2023). Further, our Supreme Court's case law made clear that, when the trial court had designated delays as being due to court congestion, the parties could argue the correctness of the trial court's determinations for the first time in their Rule 4(C) filings. *See, e.g.*, *S.L. v. State*, 16 N.E.3d 953, 959 (Ind. 2014) (defendant filed a February 5, 2013, motion under Rule 4(C) that challenged the trial court's finding of court congestion on January 30, 2012); *see also Clark v. State*, 659 N.E.2d 548, 551 (Ind. 1995) (defendant filed a March 29, 1993, motion under Criminal Rule 4(B)(1) that challenged the trial court's finding of court congestion on January 7, 1993).

---

[5] In *Mefford v. State*, a panel of our Court concluded that a defendant who does not object to continuances requested by the State "acquiesce[s]" in those delays, causing those delays to be excluded from the State's obligation under Rule 4(C). 51 N.E.3d 327, 333 (Ind. Ct. App. 2016), *trans. not sought*. That holding is contrary to the following statement from our Supreme Court: "a defendant's agreement to a continuance sought by the State is not chargeable to the defendant and does not extend the time period of Crim. R. 4(C)." *Cook v. State*, 810 N.E.2d 1064, 1067 n.3 (Ind. 2004). We decline to follow *Mefford* accordingly.

[6] Criminal Rule 4 did require our trial courts to reduce a delay due to court congestion or an emergency to an order. *See, e.g.*, Crim. R. 4(C) (2023).

[29] Unfortunately, because our trial courts had no affirmative obligation under Rule 4 to designate on the record when delays were caused by the defendant, and because the parties could argue for how to designate delays for the first time in their Rule 4(C) filings well after the delay had occurred, determining the endpoint of the State's 365-day limit under Rule 4(C) often became a game of who the better guesser was between the State and the defendant. *See, e.g.*, *State v. Myers*, 101 N.E.3d 259, 261-62 (Ind. Ct. App. 2018) ("Because Myers failed to object to the . . . trial date before the one-year period expired, he acquiesced to the trial date and waived any claim" under Rule 4(C)); *Hoskins v. State*, 83 N.E.3d 124, 128 n.2 (Ind. Ct. App. 2017) (because the defendant objected to a trial date that was "still . . . within the 365-day time limit," the objection "was not 'ripe'"). The lack of clarity in trial court records was often exacerbated for criminal defendants, who might have frequent turnover in counsel throughout the trial proceedings.

[30] By way of an amendment effective on January 1, 2024, our Supreme Court has attempted to remediate those problems by adding a new provision to Criminal Rule 4 as Criminal Rule 4.1(A)(4). That provision states: "When granting or ordering a continuance, *the court must designate whether the delay is excluded from the Rule 4 time period due to the act of the defendant*, court congestion, or emergency." Crim. R. 4.1(A)(4) (2024) (emphasis added). We believe the purpose of requiring our trial courts to designate, on the record at the time a continuance is entered, whether the delay is excluded from the Rule 4 time period due to an act of the defendant is obvious. That language is intended to

create clarity, accuracy, and reliability in trial court records for the parties and reviewing courts to calculate the Rule 4 time periods. And, in doing so, Rule 4.1(A)(4) seeks to reduce having Rule 4 operate as a guessing game and to orient the Rule back toward its most essential purpose: "to provide functionality to a criminal defendant's fundamental and constitutionally protected right to a speedy trial." *Austin*, 997 N.E.2d at 1037.

[31] It is therefore logical to conclude that Rule 4.1(A)(4) carries with it a corresponding duty on the parties to timely object in the trial court, with a specifically stated ground, to allegedly erroneous designations made by the court under that Rule. Again, the purpose of Rule 4.1(A)(4) is to enhance the functionality of Criminal Rule 4 by way of ensuring that the record is clear, accurate, and reliable throughout the trial proceedings. A timely and specific objection to an allegedly erroneous designation provides the trial court with the opportunity to cure any error and, thus, furthers the Rule's purpose. Allowing the parties to disregard the trial court's affirmative and required Rule 4.1(A)(4) designations at the time they are made and instead challenge them for the first time well after the fact by way of Rule 4 filings would frustrate Rule 4.1(A)(4)'s purpose of enhancing the functionality of Criminal Rule 4.

[32] Further, requiring the parties to lodge timely and specific objections to the trial court's Rule 4.1(A)(4) designations is also consistent with the purposes of preservation of error and waiver of appellate review. *See GKC Ind. Theatres, Inc. v. Elk Retail Invs., LLC*, 764 N.E.2d 647, 651 (Ind. Ct. App. 2002) ("The rule of waiver in part protects the integrity of the trial court; it cannot be found to have

erred as to an issue or argument that it never had an opportunity to consider"). Thus, in the absence of such an objection, we conclude that the correctness of the trial court's Rule 4.1(A)(4) designation is not preserved for appellate review.

[33] We emphasize that our conclusion that Criminal Rule 4.1(A)(4) requires the parties to timely and specifically object to allegedly erroneous designations is not, strictly speaking, a conclusion under Rule 4 itself. If our Supreme Court were to repeal Rule 4.1(A)(4), for example, the standing precedents under Rule 4(C) regarding objections, and the lack thereof, would continue to control. The duty to object to purportedly erroneous designations of delays in accordance with Rule 4.1(A)(4) is about ensuring the correctness of the trial court's records; it does not alter the State's affirmative duty to bring a defendant to trial within 365 days under Rule 4(C), nor does it impose an obligation on the defendant to remind the State or the court of the State's duty.

[34] With that background, we proceed to Billingsley's arguments on appeal.

## 1.2. The record prior to Criminal Rule 4.1(A)(4)'s effective date.

[35] Given the significance of Criminal Rule 4.1(A)(4)'s effect on Rule 4 practice and this appeal, we first consider the record here prior to Rule 4.1(A)(4)'s effective date of January 1, 2024.

[36] In his November 2024 Rule 4(C) motion to dismiss and his January 2025 renewal of that motion, Billingsley argued that he was entitled to dismissal of the State's charges because the State had repeatedly failed to provide him with

discovery in a timely manner.[7] Appellant's App. Vol. 3, pp. 13-16, 81-84. In addition to his Rule 4(C) motion, Billingsley separately sought dismissal of the State's charges for alleged misconduct and for alleged violations of his rights under *Brady v. Maryland*, 373 U.S. 83 (1963). Billingsley does not raise those issues on appeal.

[37] Our Supreme Court recognizes that some delays that are formally requested by a defendant may nonetheless be included in the State's one-year obligation under Rule 4(C). As relevant here, for example, our Supreme Court has held that, "[w]hen a trial court grants a defendant's motion for continuance because of the State's failure to comply with the defendant's discovery requests, the resulting delay is not chargeable to the defendant . . . ." *Carr v. State*, 934 N.E.2d 1096, 1101 (Ind. 2010). As we have explained, this "discovery exception" seeks to avoid putting criminal defendants in the "untenable situation" in which they "must either go to trial unprepared due to the State's failure to respond to discovery requests or be prepared to waive their rights to a

---

[7] In his initial brief to our Court, Billingsley argues that the CCS demonstrates "580 days attributable to the State." Appellant's Br. at 19. He then lists numerous dates from the CCS without further explanation, some of which are identified on the CCS as delays attributable to Billingsley. *Compare id.* (attributing thirty-nine days between September 12, 2024, to October 21, 2024, to the State) *with* Appellant's App. Vol. 2, p. 28 (September 23, 2024, CCS entry resetting the trial date to October 21, 2024, and attributing the delay to Billingsley). We agree with the State that Billingsley's argument about these 580 days was not his argument in the trial court, and, thus, Billingsley raises this argument for the first time on appeal. *See* Appellant's App. Vol. 3, pp. 13-16, 81-84. We therefore decline to consider his 580-day argument. *See Washington v. State*, 808 N.E.2d 617, 625 (Ind. 2004). Moreover, Billingsley's mere recitation of dates without further explanation is, on this record, not an argument supported by cogent reasoning. *See* Ind. Appellate Rule 46(A)(8)(a). Finally, insofar as Billingsley's Reply Brief represents yet another new calculation under Rule 4(C), we do not consider that argument either. *See, e.g.*, *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 977-78 (Ind. 2005).

speedy trial . . . ." *Wellman v. State*, 210 N.E.3d 811, 815 (Ind. Ct. App. 2023) (quotation marks omitted).

[38] We thus begin our review of the State's obligation under Rule 4(C) here with October 6, 2021, the date the State both charged and arrested Billingsley. From that date, fifty-five days passed without any delays attributable to Billingsley, court congestion, or an emergency. Thus, those first fifty-five days counted against the State's 365 days, leaving the State with 310 days to bring Billingsley to trial as of November 30, 2021.

[39] On November 30, 2021, Billingsley requested that the trial court reset the date of his omnibus hearing. The trial court agreed and set the omnibus hearing for February 8, 2022. There is no dispute that the delay that resulted from Billingsley's November 30, 2021, request is attributable to Billingsley, and, thus, no time between November 30, 2021, and February 4, 2022, counted against the State's remaining 310 days. *See* Appellant's Br. at 19.

[40] On February 4, Billingsley again moved to continue the proceedings. Appellant's App. Vol. 2, pp. 6-7. The trial court granted his request and reset the omnibus hearing for April 5. Although the State had provided Billingsley with supplemental discovery in December 2021, Billingsley does not argue on appeal that his February 4, 2022, motion to continue was *because* of the discovery provided to him in December 2021. Appellant's Br. at 19-20. Accordingly, the delay from February 4 to April 5, 2022, was attributable to

Billingsley, and those days also did not come out of the State's remaining Rule 4(C) time.

[41] At a hearing on April 5, the court ordered Billingsley to submit to a buccal swab. The State arranged to have that buccal swab taken on April 7, but Billingsley refused to comply. The State thus filed a motion for rule to show cause based on Billingsley's noncompliance with the buccal swab. On appeal, the State agrees that April 5 to April 7 counted as three days out of its remaining 310 days, and the State thus had 307 days left to bring Billingsley to trial as of April 8, 2022.

[42] The trial court scheduled a hearing on the State's show-cause motion for April 26. At that hearing, Billingsley informed the court that he was going to obtain new counsel. The court informed him that the "speedy trial time [would be] charged to him because of his req[uest]" for new counsel. Appellant's App. Vol. 2, p. 8. We agree with the State that the delays arising out of Billingsley's April noncompliance with the order to submit to a buccal swab and his ensuing request for new counsel were attributable to him and thus excluded from the State's Rule 4(C) time.

[43] For the next several months, Billingsley continued to seek new counsel. Meanwhile, in August and September 2022, the State continued to provide supplemental discovery. Later in September, the court held a status-of-counsel hearing and informed Billingsley that the "Rule 4 time" continued to be "attributable" to him. *Id.* at 11. On October 24, the court appointed a public

defender for Billingsley. Billingsley's new counsel filed an appearance and a motion to continue on October 26 and again requested a continuance in open court on November 4. The court granted those requests and set a hearing date for January 13, 2023, on pending motions.

[44] In his brief on appeal, Billingsley asserts that the State's supplemental discovery in August and September 2022 should have resulted in time out of the State's remaining 307 days. Appellant's Br. at 20. But the proceedings were already delayed during those times by Billingsley's search for new counsel. *See* Appellant's App. Vol. 2, pp. 8-13. Billingsley has not demonstrated that the State's supplemental discovery in August and September 2022 was in fact the cause of any delay, and we therefore agree with the State that the delay from April 8, 2022, to January 13, 2023, was caused by Billingsley.

[45] After resolving pending matters at the January 13, 2023, hearing, the trial court set Billingsley's trial date for August 7. There is no dispute that the next 195 days, from January 14 to July 28,[8] reduce the State's remaining time under Rule 4(C), from 307 days down to 112 days. *See* Appellee's Br. at 23.

---

[8] Prior to the 2024 amendments to Criminal Rule 4, our Supreme Court had held that, "when a defendant requests a continuance, the elapsed period between his motion for a continuance and the new trial date is generally" the time that is excluded from the State's Rule 4 obligations. *Stephenson v. State*, 742 N.E.2d 463, 488 (Ind. 2001) (citing *Vermillion*, 719 N.E.2d at 1204). We therefore apply that computation to this pre-2024 timeframe. However, that computation was also changed by the 2024 amendments, which added the following language to our Criminal Rules:

> In computing the period of delay caused by a motion to continue, the delay is measured from the original trial date to the rescheduled trial date. In the event no trial date has yet been scheduled and a pretrial hearing is continued, the period of delay is measured from the original hearing date to the rescheduled hearing date.

[46]     In late July 2023, the State again provided Billingsley with supplemental discovery. The trial court held what was then scheduled to be the final pretrial conference on July 28. At that hearing, Billingsley requested a continuance of his August 7 jury trial, which the court granted, resetting the jury trial for December 11. The court then ordered the State to provide Billingsley with all discovery no later than October 6, 2023.

[47]     The court's CCS and corresponding order do not say what the basis of Billingsley's July 28, 2023, request for a continuance was. Appellant's App. Vol. 2, p. 15; Appellant's App. Vol. 3, p. 50. And, while Billingsley asserts on appeal that the State's late-July 2023 supplemental discovery was material evidence, he does not explicitly argue to our Court that his July 28 request for a continuance was *because* of the State's July supplemental discovery. *See* Appellant's Br. at 19-21. Nor did Billingsley request the trial court clerk to prepare a transcript of the July 28 hearing for our review. On this record, we are therefore obliged to conclude that Billingsley's July 28 request for a continuance caused a delay that was excluded from the State's Rule 4(C) obligation.

[48]     In September and October 2023, the State provided Billingsley with additional supplemental discovery. The State's October 2023 supplemental discovery was after the trial court's October 6 deadline and without explanation or leave of

---

Crim. R. 4.1(A)(3) (2024). We note that, if that language on the computation of time applied to the January 14, 2023, to August 7, 2023, timeframe, ten more days would be subtracted from the State's remaining Rule 4(C) time.

court. In his brief to our Court, Billingsley asserts that the State should have fifteen days deducted from its remaining 112 days because of the State's September and October supplemental discovery. But the State provided Billingsley with that supplemental discovery during a delay between July 28 and December 11 that was ongoing due to Billingsley's own continuance request. We therefore reject Billingsley's argument that any additional delay occurred because of the State's September or October 2023 supplemental discovery. *See id.*

[49] On November 14, 2023, Billingsley moved to continue his December 11 trial date due to his counsel having a scheduling conflict with another trial. In his motion, Billingsley acknowledged that "the delay in the proceedings" would be "chargeable to [him] pursuant to Indiana Criminal Rule 4." Appellant's App. Vol. 3, p. 51. The court granted the request and set the matter for a status hearing on January 19, 2024. Accordingly, from July 28, 2023, through the end of the 2023 calendar year, all delays in holding Billingsley's trial were attributable to him and excluded from the State's Rule 4(C) obligation. Thus, as 2023 rolled over into 2024, the State had 112 days remaining in which to hold Billingsley's trial.

### 1.3. The record after Criminal Rule 4.1(A)(4)'s effective date.

[50] As discussed above, our new Criminal Rule 4.1(A)(4) became effective on January 1, 2024. We therefore consider the record going forward with its requirements in mind.

On January 16, 2024, the State again provided Billingsley with late supplemental discovery. At the January 19, 2024, status hearing, the court set Billingsley's jury trial for May 13. The court's CCS states the trial date was "[b]y agreement of the parties." Appellant's App. Vol. 2, p. 19. Although Billingsley argues to us that the State's January 16 supplemental discovery was material evidence, he again does not explicitly argue that any delay happened *because* of that supplemental discovery, nor does he argue that the May 13, 2024, trial date was not attributable to delays caused by his own acts, *i.e.*, his July and November 2023 continuance requests. We conclude that the ongoing delay up to the May 13, 2024, trial date remained attributable to Billingsley and excluded from the State's Rule 4(C) obligation.

On April 26, Billingsley asked the court to withdraw the appearance of his attorney, to appoint him a new attorney, and to vacate the May 13 trial date. Over the State's objection, the trial court granted Billingsley's requests and, in accordance with Criminal Rule 4.1(A)(4), specifically designated on the record that the resulting delay was excluded from the State's Rule 4(C) obligation due to Billingsley's acts. *Id.* at 21. Billingsley did not object to the trial court's designation of the delay as attributable to him, and the State had the right to rely on the trial court's representation in the absence of an objection. We therefore conclude that his argument on appeal that the next twelve days should have counted against the State's remaining 112 days has not been preserved for our review.

[53] On April 29, Billingsley's new counsel filed his appearance. The court then held a hearing on May 8, at which the court set a new trial date, without objection, for August 12. The delay from the May 13, 2024, trial date to the August 12, 2024, trial date was the result of Billingsley's request for change of counsel and attributable to him accordingly. *See* Crim. R. 4.1(A)(3) (directing the computation of time to be "measured from the original trial date to the rescheduled trial date").

[54] On appeal, Billingsley contends that sixty-eight days between May 10, 2024, and July 17, 2024, should be subtracted from the State's remaining 112 days. We disagree. That delay was ongoing and attributable to Billingsley in accordance with the trial court's April 26 designation that the delay resulting from his change of counsel would be excluded from the Rule 4(C) time period. Again, Billingsley did not object to that designation, and the State had a right to rely on it. We therefore reject Billingsley's argument regarding those sixty-eight days.

[55] On August 5, one week before Billingsley's rescheduled trial date, the State again provided him with late supplemental discovery. At the then-final pretrial conference four days later, Billingsley requested the trial date be continued, which the court granted. The court set Billingsley's new trial date for September 23. The trial court specifically designated on the record that the delay in the proceedings up to the new September 23 trial date was excluded from Criminal Rule 4's time periods due to Billingsley's continuance request. Appellant's App.

Vol. 2, p. 25; Appellant's App. Vol. 3, p. 56. Billingsley did not object to the trial court's designation.

[56] The reason for Billingsley's August 9 request for a continuance is not clear from the record on appeal. Billingsley's motion to continue appears to have been an oral motion made to the court at the August 9 hearing, and he did not request a transcript of the August 9 hearing for our Court to review. In his brief to our Court, Billingsley suggests that the State's late supplemental discovery on August 5 was the cause of his August 9 request to continue his August 12 trial. But, based on the trial court's explicit designation of that delay to Billingsley, and his corresponding lack of objection to that designation, we conclude that the delay was excluded from the State's Rule 4(C) obligation.

[57] On September 4, 2024, nineteen days before the rescheduled September 23 jury trial and six days before motions in limine and proposed jury instructions were due, the State again provided Billingsley with late supplemental discovery. On September 17, the date of the then-final pretrial conference, the State again provided Billingsley with late supplemental discovery. At the September 17 final pretrial conference, the court affirmed the September 23 trial date. On September 20, the State yet again provided Billingsley with late supplemental discovery. And, on September 23 but prior to the empaneling of a jury, the State provided still more late supplemental discovery and further moved to amend the information.

[58] According to the trial court's order entry of September 23, the parties then "jointly move[d] to reset the Jury Trial to October 21, 2024," and Billingsley "agree[d] to accept Criminal Rule 4 time." Appellant's App. Vol. 3, p. 58. The trial court likewise expressly designated the delay from the joint September 23 request to reset the trial date to Billingsley on the court's CCS in accordance with Criminal Rule 4.1(A)(4). Appellant's App. Vol. 2, p. 28. And, again, Billingsley did not object to the trial court's designation that the ensuing delay would be excluded from the State's Criminal Rule 4(C) obligation; indeed, the trial court's statement that he had "agree[d] to accept" the time suggests not just waiver but invited error (if any error). Appellant's App. Vol. 3, p. 58. Thus, the delay from September 23, 2024, to October 21, 2024, was excluded from the State's Rule 4(C) obligation, and the State still had 112 days left under Rule 4(C) to bring Billingsley to trial. *See* Crim. R. 4.1(A)(3).

[59] Four days before the rescheduled October 21, 2024, jury trial, the State once again provided Billingsley with late supplemental discovery. The next day, Billingsley moved for dismissal based on alleged misconduct. And, on October 21, Billingsley moved for a continuance or, in the alternative, for the exclusion of evidence.

[60] The trial court granted Billingsley's motion to continue and reset his trial for November 18, 2024, and Billingsley withdrew his motion to dismiss. The court did not designate on the record that the ensuing delay would be excluded from the Criminal Rule 4 time due to an act of the defendant. Thus, by implication, the ensuing delay was not excluded. *See* Crim. R. 4.1(A)(4). From October 21,

2024, forward, the time once again counted against the State's Criminal Rule 4(C) obligation.

[61] On November 6, 2024, the State provided Billingsley with additional late supplemental discovery. The State did so again on November 15, the date of the new final pretrial conference. Billingsley moved to continue his jury trial. The trial court granted his motion and set his jury trial for January 6, 2025. In doing so, the court expressly attributed the delay to the State. On December 20, the State provided still more supplemental discovery to Billingsley.

[62] Seventy-seven days elapsed from October 21, 2024, to January 6, 2025, leaving the State with thirty-five days remaining of its 365 days under Criminal Rule 4(C). On January 6, 2025, the trial court empaneled a jury for Billingsley's trial. In doing so, the State's 365-day obligation under Rule 4(C) came to an end with thirty-five days remaining. *See Vermillion*, 719 N.E.2d at 1204. The State then provided yet more supplemental discovery on January 7, which ultimately resulted in the State dismissing the Level 3 felony allegation, and the trial court declared a mistrial on January 8 due to an unspecified medical emergency. The court held Billingsley's retrial in May, but the timing between his January 6 trial and his May retrial is not an issue for us. *See* Crim. R. 4(C) (2024).

[63] We emphasize that Billingsley's argument on appeal that the State played games with discovery that caused a Rule 4(C) violation is not an unreasonable argument. In August, September, October, and November 2024, the State provided extremely late supplemental discovery to Billingsley within days of his

trial dates. In January 2025, the State did so again at the beginning of Billingsley's trial, and as a result the State had to dismiss the Level 3 felony allegation.

[64] If our review of this record were only under Rule 4(C), and had Billingsley requested transcripts that proved his point, Billingsley's argument would not have been without merit. But this record is not simply a recitation of events out of which we must divine an allocation of Rule 4(C) time. Our record is *also* a Rule 4.1(A)(4) record that expressly states how the trial court was counting the Rule 4(C) time from January 1, 2024, forward. And, under Rule 4.1(A)(4), if Billingsley believed the trial court's designations of delays to him were incorrect when the trial court made them on the record, it was his duty to timely and specifically object to those designations and give the trial court the opportunity to cure any error. As he did not do so, we conclude that he has not shown a Rule 4(C) error, and we affirm the trial court's denial of his motion to dismiss.

## 2. The trial court did not abuse its discretion in the admission of evidence.

[65] Billingsley also argues on appeal that the trial court abused its discretion in the admission of certain evidence. We review the trial court's decision to admit or to exclude evidence for an abuse of discretion. *See, e.g.*, *Wilson v. State*, 765 N.E.2d 1265, 1272 (Ind. 2002). "An abuse of discretion occurs when the court's decision either clearly contravenes the logic and effect of the facts and circumstances" before it, or the court "misinterprets the law." *Nardi v. King*, 253 N.E.3d 1098, 1103 (Ind. 2025) (quotation marks omitted).

## 2.1. The surveillance videos.

We first consider the trial court's admission of the surveillance videos from the Fairbridge Inn and the Economy Inn (and corresponding screenshots from those videos). According to Billingsley, the State failed to establish a sufficient foundation for those recordings under the silent-witness doctrine. Under the silent-witness doctrine, our trial courts may admit videos and photographs "as substantive rather than demonstrative evidence." *McCallister v. State*, 91 N.E.3d 554, 561 (Ind. 2018). To do so, "there must be a strong showing of authenticity and competency, including proof that the evidence was not altered." *Id.* at 561-62. That is, "there must be adequate proof of the reliability of the process that produced what the photographs" or videos depict. *Stott v. State*, 174 N.E.3d 236, 246 (Ind. Ct. App. 2021).

As we have explained:

> [Indiana's case law] addressing surveillance footage or images derived from that footage under the silent-witness theory establish[es] that the evidence may be admissible when there is testimony from someone with knowledge on the security system that produced the video or image, on the integrity of the system's process, and on whether video or image was altered. For example, in *McCallister v. State*, our supreme court found that testimony from a hotel manager authenticated "a DVD purporting to show surveillance video" of a hotel lobby by describing how the security system operated, by verifying the accuracy of the time-and-date stamp on the footage, and by indicating that the video showed what it purported to show. 91 N.E.3d at 561-62. Similarly, in *Flowers v. State*, the security director for a company that owned an apartment complex authenticated surveillance footage from the complex as well as

several images derived from that footage "in several important respects." 154 N.E.3d 854, 869-70 (Ind. Ct. App. 2020). The director's testimony established that he was intimately familiar with the type of system in place, including how it worked, where the cameras were placed, and how the cameras operated. *Id.* at 869-70. He also accessed the footage multiple times and signed and dated the DVD to which the video had been saved. *Id.* at 870. Likewise, in *Rogers v. State*, a CVS supervisor authenticated surveillance footage and images derived from that footage through extensive testimony "regarding CVS's security system and the procedure he used to view, copy, and edit the footage." 902 N.E.2d 871, 877 (Ind. Ct. App. 2009).

*Id.* We have also acknowledged the importance of an appropriate foundation for such evidence given that "it is increasingly easier in today's digital age to manipulate or distort images." *Id.* at 247.

[68] The State established a sufficient foundation for the Fairbridge Inn video recordings through McQuen. She testified to the location and number of cameras that made up the Fairbridge Inn security system. She testified to the location of the database on which recorded footage was stored and who was able to access that database. She testified that she had watched the recordings prior to trial and that their contents were consistent with her personal recollections and also had not changed between her viewings. And she testified that she was the Fairbridge Inn employee who had permitted officers to access and download the recordings in question.

[69] The State also established a sufficient foundation for the Economy Inn video recordings through Tants. He testified to the location of the cameras that made

up the Economy Inn security system. He explained how the system worked, noting that the cameras recorded continuously, downloaded to an in-office hard drive, and overwrote their data every three days. He testified that the system was in working order on the date in question and that, aside from the time stamp being off by a few minutes, the recordings appeared to be accurate based on their respective locations and what they showed. And the recordings were also consistent with his personal recollection.

Still, Billingsley argues that McQuen and Tants failed to establish sufficient foundations because they could not describe the precise method by which the recordings were downloaded from the hotel databases onto the State's equipment. He also argues that they did not establish sufficient foundations because they did not personally witness everything depicted in the videos. Such showings were not required, however. *See id.* at 246-47. Billingsley's arguments therefore fail.

### 2.2. The cash and Billingsley's refusal to submit to a buccal swab.

Billingsley also argues that the trial court abused its discretion when it admitted into evidence the large sum of cash found on his person upon arrest as well as his April 2022 refusal to submit to a buccal swab. We need not consider these arguments in depth, however. As our Supreme Court has made clear:

> When an appellate court must determine whether a non-constitutional error is harmless, [Indiana Appellate] Rule 66(A)'s "probable impact test" controls. Under this test, the party seeking relief bears the burden of demonstrating how, in light of all the evidence in the case, the error's probable impact undermines

confidence in the outcome of the proceeding below. Importantly, this is not a review for the sufficiency of the remaining evidence; it is a review of what was presented to the trier of fact compared to what should have been presented. And when conducting that review, we consider the likely impact of the improperly admitted or excluded evidence on a reasonable, average jury in light of all the evidence in the case. Ultimately, the error's probable impact is sufficiently minor when—considering the entire record—our confidence in the outcome is not undermined.

*Hayko v. State*, 211 N.E.3d 483, 492 (Ind. 2023) (citations omitted).

Applying that test here, we conclude that the probable impact of the cash and Billingsley's refusal to submit to a buccal swab on the jury's verdict was minor based on the totality of the record, and our confidence in the jury's verdict is not undermined by any error in the admission of that evidence. Accordingly, any error in the trial court's admission of that evidence is not reversible error.

## Conclusion

For all of these reasons, we affirm Billingsley's conviction for murder.

Affirmed.

May, J., concurs.
Felix, J., concurs in part and concurs in result with a separate opinion.

ATTORNEY FOR APPELLANT

R. Brian Woodward
Office of the Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Steven J. Hosler
Deputy Attorney General
Indianapolis, Indiana

**Felix, J., concurring and concurring in result.**

I fully concur in Issue 2, and I concur in result as to Issue 1 but respectfully disagree with a portion of the majority's analysis. Before reaching that disagreement, I first note a point of agreement: decisions concerning to whom a Criminal Rule 4 delay should be attributed should be made *at the time the continuance is entered*. *Ante* at ¶ 30. On this front, I write separately to emphasize that our review of such a decision should be likewise limited to the record available to the trial court at the time it made that decision. *See ante* at ¶¶ 36–49, 51–62; *Heitz v. State*, 263 N.E.3d 181, 196–98 (Ind. Ct. App. 2025) (Felix, J., dissenting) (analyzing disputed Criminal Rule 4 delay attribution in context of only the record available at the time the continuance was entered), *trans. not sought*. We should not view the record "holistically" such that we use later proceedings to inform our analysis of previously granted continuances. *Heitz*, 263 N.E.3d at 194 (analyzing disputed Criminal Rule 4 delay attribution by reference to proceedings that post-dated that continuance).

I respectfully disagree with the majority's holding that if the trial court grants a continuance but does not designate that the resulting delay is excluded from the Criminal Rule 4 time period due to the act of the defendant, court congestion, or emergency, then the delay is not excluded. *See ante* at ¶¶ 2, 60. Criminal Rule 4.1(A)(4) does not create such a presumption, implication, or default setting. Instead, if a trial court grants a continuance but fails to comply with Criminal Rule 4.1(A)(4)'s designation requirement, then when a Criminal Rule 4 motion to dismiss is filed, the trial court must review the record to determine

who requested the continuance, what caused the continuance, and any other relevant facts. *See Bradley v. State*, 248 N.E.3d 563, 567 (Ind. 2024) (citing *Austin v. State*, 997 N.E.2d 1027, 1039 (Ind. 2013)) (explaining Criminal Rule 4 decisions depend on "the facts and circumstances of the particular case"). Similarly, on appeal, this court should—as it always has—review the record and facts surrounding the trial court's decision to grant the continuance. *See id.* (citing *Austin*, 997 N.E.2d at 1039). To be clear, I disagree with the majority's belief that the Criminal Rule 4.1(A)(4) has "by implication" a requirement that a delay not be excluded whenever a court forgets or fails to attribute the delay as required by the rule. Such an implication would render Criminal Rule 4 a "technical means to avoid trial." *Grimes v. State*, 235 N.E.3d 1224, 1230 (Ind. 2024) (quoting *Cundiff v. State*, 967 N.E.2d 1026, 1028 (Ind. 2012)).

[77] Here, Billingsley's October 21, 2024, written continuance motion, *see ante* at ¶ 59, was based solely on the State's untimely discovery response, which it provided more than one year after the October 6, 2023, deadline. Billingsley specifically requested the trial court "attribute the continuance [of the jury trial] to the State." Appellant's App. Vol. II at 149. Although Billingsley did not request a transcript of the October 21 hearing for our Court to review, there is no indication in the trial court's CCS entry regarding that hearing that Billingsley relented this position. On this record—where the trial court routinely followed Criminal Rule 4.1(A)(4)'s designation requirement and Billingsley requested a continuance based on the State's late-filed discovery—it is clear that the delay in trial was because of that late-filed discovery.

Therefore, this delay was attributable to the State. *See Carr v. State*, 934 N.E.2d 1096, 1101 (Ind. 2010). The majority also concludes that this delay was attributable to the State, and I agree with the rest of the majority's analysis in Issue 1. I therefore concur and would also affirm the trial court's denial of Billingsley's motion to dismiss.